COMMONWEALTH of Pennsylvania,
Appellee,

v.

Reginald JOHNSON, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 5, 2000.
Filed Feb. 26, 2001.

Thomas R. Quinn, Philadelphia, for appellant.

Brenda Doherty, Assistant District Attorney, Philadelphia, for Com., appellee.

Before JOHNSON, TODD and BECK, JJ.

BECK, J.:

¶ 1 This case prompts our consideration of the stalking law, 18 Pa.C.S.A. § 2709, specifically, the type of conduct necessary to satisfy the "course of conduct" language in the statute. We also address the appropriate remedy for a violation of an accused's right to be present at all stages of the proceedings against him.

¶ 2 Appellant was convicted of stalking, aggravated assault and related charges. He claims that the trial court erred in giving supplemental jury instructions outside his presence. He also claims that the evidence was insufficient to establish stalking and that the court erred in imposing sentence without the benefit of a presentence report and without an awareness of the applicable guidelines. While we uphold appellant's convictions, we vacate the judgments of sentence and remand for resentencing.

¶ 3 The evidence at trial established an acrimonious relationship between appellant and the victim, Karen Slaughter, who is the mother of his child. After receiving a series of threats from appellant, Ms. Slaughter was successful in having a protection from abuse order issued against him. Several months later, while the order was in effect, appellant followed the victim in his car as she was being driven home from work by her mother. Appellant followed the women for several miles, frequently pulling up beside them making obscene gestures and statements along the way. Fearing a confrontation, Ms. Slaughter and her mother stopped at their local police precinct to report the incident. After doing so, they returned home with a police escort. As they approached their residence, they observed a man who looked like appellant fleeing from their porch. They also saw appellant's car parked outside the home. Once inside the house, they again contacted police, who responded promptly and arrested appellant in the neighborhood.

¶ 4 Over a year passed and the parties settled into a pattern of shared custody. A court order entitling appellant to intermittent weekend visitation with the couple's daughter provided that transfer of custody take place at a nearby police station. On the morning such a transfer was scheduled, appellant called the victim and informed her that he could not meet her at the station. He asked Ms. Slaughter to bring their daughter to his residence and

she obliged. However, when the victim arrived with the child, appellant stated that he didn't want visitation. Ms. Slaughter put the girl back in her car, got into the car herself and attempted to drive away. Appellant would not permit her to do so. Instead, he grabbed the child from the car and began to accuse the victim of being involved with another man. Appellant punched the victim in the face and struck her on the head with a "club," a metal bar device used as a steering wheel lock. In an attempt to pull the victim from the car, appellant grabbed her by her hair and pulled the hair from her head. Using the club, appellant smashed the windshield of the victim's car. Police arrived, arrested appellant and charged him with aggravated assault and related crimes.

¶ 5 At trial, all of the unlawful contacts appellant had with the victim were consolidated. He faced charges of Harassment, Stalking, Aggravated Assault, Criminal Mischief, Possession of an Instrument of Crime and Contempt for Violation of a Court Order. The jury found him guilty of all charges and the trial judge sentenced him to an aggregate term of 15 to 30 years in prison. This appeal followed.

¶ 6 We first address appellant's sufficiency claim regarding his conviction for stalking. If he prevails, he is entitled to dismissal of that charge. Our test for sufficiency is whether, viewing all the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth as verdict winner, the jury could have reasonably determined that all elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000).

¶ 7 The crime of stalking is established when the Commonwealth shows the accused engaged in a course of conduct against another, including following that person, with the intent to place the person in reasonable fear of bodily injury or with the intent to cause substantial emotional distress to the person. 18 Pa.C.S.A. § 2709(b).

¶ 8 The parties agree and the record makes clear that the stalking charge in this case was based wholly on appellant's conduct on the day he followed the victim home from work. Appellant does not claim that the Commonwealth failed to prove the necessary intent; rather he maintains that the evidence does not establish a course of conduct. The law defines a course of conduct as a "pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 Pa. C.S.A. § 2709(f); *Commonwealth v. Leach*, 729 A.2d 608, 611 (Pa.Super.1999).

¶ 9 The Commonwealth asserts that appellant engaged in two actions on the day in question. His first was when he followed the victim and her mother for nearly one half-hour, all the while yelling obscenities and making obscene gestures. He did so at a time when a court order precluded him from making contact with Ms. Slaughter. This pursuit in the car ceased when Ms. Slaughter stopped and made a report at the local police station. Appellant's second act occurred when the victim returned to her home that day. Once again she encountered appellant, who was acting in defiance of a court order. This time, he was on foot and on her property. His car was parked outside her residence.

¶ 10 Appellant properly argues that the stalking law requires "proof of two related but separate events" in order to satisfy the statute. *Leach, supra*, at 611. "[T]he elements of stalking are not established until the occurrence of a second prohibited act ... extend[s] the course of conduct." *Id.* at 611–12. In the context of stalking, this court has explained that "course of conduct by its very nature requires a showing of a repetitive pattern of behavior." *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 653 A.2d 706, 710, *appeal denied*, 541 Pa. 625, 661 A.2d 873 (1995). The question in this case is wheth-

er appellant's conduct on that date constituted "more than one act," as argued by the Commonwealth, or "a single encounter," as claimed by appellant.

¶ 11 Upon review of the facts, we conclude that appellant's contacts with the victim on that day were sufficient to constitute a *course of conduct.* The statute specifically defines the term as "more than one act over a period of time, *however short.*" 18 Pa.C.S.A. § 2709(f) (emphasis supplied). Appellant, in defiance of a court order, followed and berated his victim on a public highway, instilling fear in her as he did so. Thereafter, even though the victim escaped his pursuit and made a report to police, he once again initiated "surveillance" of her at her home, this time fleeing only when she appeared with a police escort. Appellant's acts are distinct in both their nature (first in a motor vehicle on a public highway and second on foot at her home) and in time (both before and after her report to police). As such, they constitute a course of conduct and are sufficient to satisfy the stalking statute.

¶ 12 Appellant next claims that the trial court erred when it gave supplemental instructions to the jury in his absence. The record establishes that after deliberations began, the jury requested the definitions for the crimes of aggravated assault, stalking and possession of an instrument of crime, as well as the definition for the defense of justification. Defense counsel asked that appellant be present in the courtroom for the supplemental instructions, but the court refused. Instead, the judge gave the supplemental instructions outside the presence of appellant, his counsel and the prosecutor. He assured counsel that he would give only the instructions asked for and no others.

¶ 13 The transcript reveals that the court reiterated the definitions of the crimes and defenses requested by the jury. The court ended its recitation with the question "Is that it?" Thereafter, the following exchange took place:

Juror: The definition of stalking says, "two or more." In this instance, there appears to be only one. Can I ask that question?

The Court: Well, I have read the definition for you. Okay? You now have to apply that definition to the facts as you find them. I can't be part of your deliberations. You know what the definition is, and you will collectively decide what the facts are, and you are to apply one to the other.

Juror: All right.

The Court: You may now retire to continue your deliberations.

Trial Transcript, 10/15/98, at 145.

¶ 14 Appellant now argues: 1) that his absence during this exchange constituted a violation of his constitutional rights to be present at all stages of the proceedings against him and to be represented by counsel; and 2) a new trial is warranted. While we agree with the former, we do not agree with the latter.

¶ 15 The law is clear that appellant had a right to be present during the court's supplemental jury instructions; his and his attorney's absence implicated both his right to be present at all stages of the proceedings against him, as well as his right to representation. *See Commonwealth v. Basemore,* 525 Pa. 512, 582 A.2d 861, 866 (1990) (the right of the accused to be present in the courtroom at every stage of a criminal trial is grounded in both federal and state constitutions); *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101, 106 (1978) (the right to counsel applies at all critical stages of a criminal proceeding). However, it is not enough for appellant to show that he was denied these rights; he must also establish that the denial resulted in prejudice to his case, requiring the grant of a new trial. *See Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973) (where properly admitted evidence of guilt is overwhelming and prejudicial effect of constitutional error is insignificant, error is harmless) (relying on *Schneble v. Florida,*

405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)). *See also Commonwealth v. Diehl,* 402 Pa.Super. 12, 585 A.2d 1112, 1115 (1991) (error of constitutional magnitude does not prompt reversal unless it was not harmless).

¶ 16 In *Commonwealth v. Mosley,* 535 Pa. 549, 637 A.2d 246 (1993), our supreme court noted that *ex parte* contact between "jurors and other parties, court officers, lawyers, and judges is viewed with disfavor." *Id.* at 248. Relying on *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733 (1983), the *Mosley* court held that an accused must establish "a reasonable likelihood of prejudice" in order to prevail on such a claim. *Mosley, supra,* at 248. The United States Supreme Court likewise applies a harmless error standard to cases involving *ex parte* contact between members of the jury and the court. *See Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (where trial judge's unrecorded discussions with a juror did not affect the verdict, new trial not required). So too do the various federal courts of appeal. *See, e.g., United States v. Smith,* 31 F.3d 469 (7th Cir.1994) (appellant entitled to new trial where judge's contact with jury may have prejudiced appellant); *United States v. Harris,* 9 F.3d 493 (6th Cir.1993) (trial court's *ex parte* response to jury's question during deliberations was harmless error since it merely provided written copy of instructions already given to jury); *United States v. Parent,* 954 F.2d 23 (1st Cir.1992) (trial judge's response to jury's question before sharing it with counsel subject to harmless error analysis); *United States v. Birges,* 723 F.2d 666 (9th Cir.1984) (same).

◼ ¶ 17 In this case, appellant has failed to show how he was prejudiced by the trial court's error in this case. He does not assert that the court's response to the jury was improper, illegal or erroneous. Although he claims prejudice; he

does not substantiate his claim. Appellant relies on *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564 (1999), for the proposition that denial of his right to representation during the court's supplemental instructions constitutes prejudice *per se.* However, those cases stand for the proposition that where an accused suffers complete denial of representation in the proceedings against him, prejudice may be presumed. Clearly, the lack of representation only during supplemental jury instructions does not implicate this rule.

¶ 18 Appellant also relies on *Parent, supra,* in claiming that his absence during the supplemental instructions left him without an "opportunity to convince the judge that a different response to the jury would be appropriate." Appellant's Brief at 15. However, appellant has not alleged what response he would have offered. Further, the record clearly establishes that the response given by the court was proper. The jury requested a series of definitions and the court recited them as requested. The definitions were virtually the same as those originally read to the jury. When one of the jurors commented on the application of the law to the facts, the judge responded in the only manner proper for such a question. He told the jurors to apply the law to the facts as they found them. He made no other comments to the jurors and deliberations resumed.

¶ 19 Upon review of the transcript setting out the supplemental instructions, we conclude that not only has appellant failed to offer the "different response" that the court should have made, there was none. Thus, although the court clearly erred in refusing to allow appellant and his attorney to be present during the supplemental instructions, no prejudice inured to appellant as a result.[1] In light of this fact, and in light of the overwhelming record evi-

---

1. Apparently the trial court believed that insuring appellant's presence in the courtroom would delay matters and so denied counsel's request. The court should have granted counsel's request despite the delay.

dence of appellant's guilt, the court's error was harmless and a new trial is not warranted. *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978).

¶ 20 Appellant's final claim concerns his sentence. He challenges the discretionary aspects of his sentence, arguing that the trial court erred in 1) failing to order a presentence report, 2) failing to give adequate reasons for dispensing with the report and 3) failing to have before it adequate information regarding the sentencing guidelines and appellant's personal history. Appellant's brief satisfies the technical requirements for raising these claims. Pa.R.A.P. 2119(f). Further, an *en banc* panel of this court has found that such claims raise a substantial question warranting appellate review. *Commonwealth v. Goggins,* 748 A.2d 721, 727 (Pa.Super.2000) *(en banc ).*

¶ 21 After review of the sentencing transcript, we conclude that the trial court fell short of compliance with *Goggins,* wherein we stated:

> The first responsibility of the sentencing judge is to be sure that he has before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant. Thus, a sentencing judge must either order a PSI [presentence investigation] report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background. While the extent of the pre-sentence inquiry may vary depending on the circumstances of the case, "[a] more extensive and careful investigation is clearly called for in felony convictions, particularly where long terms of confinement are contemplated. The court must exercise the utmost care in sentence determination if the defendant is subject to a term of incarceration of one year or more....

> \* \* \*

> Though ... [case law does] not require that the trial court order a pre-sentence investigation report under all circumstances, the cases do appear to restrict the court's discretion to dispense with a PSI report to circumstances where the necessary information is provided by another source.

> \* \* \*

> The expansive and probing character of the "essential elements" of an adequate PSI report demonstrates, beyond peradventure, that a proper pre-sentence investigation requires a searching inquiry into circumstances well beyond the scope of the record compiled at trial or the court's [summary] colloquy ... [of the defendant].

*Id.* at 728–29.

■ ¶ 22 The sentencing court is required to state on the record adequate reasons for dispensing with a presentence report. Pa.R.Crim.P. 1403(A)(2). Further, in lieu of the report, the court may not engage in a merely "superficial" inquiry; rather, the inquiry must "reflect the court's familiarity with particular circumstances of the offense and the character of the defendant." *Goggins, supra,* at 730–31.

¶ 23 The record in this case shows that the trial court did not delve into appellant's social and family history. Instead, the court asked few probing questions. In addition, the court did not consider the guidelines for each of the charges for which appellant was sentenced. Finally, the court did not state for the record its reasons for dispensing with a presentence report. Rather, the court summarily concluded that it "had enough" to proceed and thereafter imposed a series of sentences in excess of the aggravated range, in some instances the maximum permitted by law.

■ ¶ 24 In light of the transcript of the entire sentencing hearing, which occurred immediately after the verdict was rendered, as well as the length of the sentence

the court ultimately imposed, we are compelled to vacate the judgment of sentence. Like the court in *Goggins*, we hold that "the trial court was required to apprise itself sufficiently to impose sentence in an informed fashion ... by a PSI report or otherwise, and if it chose to dispense with a PSI report, to provide cognizable reasons why. The court's failure to do either is error and requires that the matter be remanded for re-sentencing." *Id.* at 731.

¶ 25 The verdicts of guilty are affirmed. The judgment of sentence is vacated; the matter is remanded for resentencing. Jurisdiction relinquished.