828 A.2d 1009

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Reginald JOHNSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 2002.

Decided July 22, 2003.

6

Thomas Russell Quinn, Philadelphia, for Reginald Johnson, appellant

Catherine Lynn Marshall, William George Young, Philadelphia, for the Commonwealth of Pennsylvania, appellee.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR AND EAKIN, JJ.

8

## *OPINION*

Justice EAKIN.

Appellant was tried for terroristic threats, harassment by communication or address, stalking, aggravated assault, criminal mischief, possession of an instrument of crime, and contempt for twice violating a court order. These charges arose out of an acrimonious relationship between appellant and the mother of his child. During deliberations, the jury requested the court to repeat the definitions for several of these crimes and their elements. The following exchange occurred between the trial court and appellant's counsel:

Court: The jury has a question. If necessary, they want a definition of stalking, possession of an instrument of a crime, cause or attempt to cause bodily injury with a deadly weapon, and cause or attempt to cause serious bodily injury.

Counsel: Your Honor, under the circumstances, I would ask that the defendant be brought up, please.

Court: Well, we're not going to be able to do that, so what I'm going to do is, I'm asking all of the parties to be out of the courtroom. I will give those definitions, and when we get to it, you can ask the court reporter to read back what I said. But what I'm going to do is, I'm going to read the aggravated assault, justification, the PIC charge, the stalking charge, and I will not give the simple assault charge, because they didn't ask for it.

Counsel: Judge, just for the record, we would ask that there not be a charge to the jury, or anything happen without counsel or the client being here.

Court: I understand that. The problem that we have at this point is that we have a jury panel in the next room for the case of *Commonwealth v. Al Griffin.* We have that defendant up. These people have been here all day, and we're going to bring the defendant through and take him into the courtroom. If we bring this defendant up. We have to send the

other one down. It's going to delay that another half an hour next door, so we're not going to do that. I understand your point, and as long as it's on the record, you can tell your client you made a record. Okay?

Counsel: [no response].

N.T., 10/15/98, at 134–36.

The court then addressed the jury outside the presence of appellant, his counsel, and the prosecutor. After giving the requested definitions, the court had the following exchange with a juror:

Court: Is that it?

Juror: The definition of stalking says, "two or more." In this instance, there appears to be only one. Can I ask that question?

Court: Well, I have read the definition for you. Okay? You now have to apply that definition to the facts as you find them. I can't be part of your deliberations. You know what the definition is, and you will collectively decide what the facts are, and you are to apply one to the other.

Juror: All right.

Court: You may now retire to continue your deliberations.

N.T., 10/15/98, at 145. Appellant was convicted of all charges, except terroristic threats.

On appeal, appellant argued his absence during the jury instructions violated his constitutional right to be present at all stages of the proceedings and to be represented by counsel. *Commonwealth v. Johnson*, 768 A.2d 1177 (Pa.Super.2001). The Superior Court agreed appellant had a right of presence and representation; however, the supplemental jury instructions were deemed to be *ex parte* communications, subject to a harmless error analysis. *Id.*, at 1181 (citing *Commonwealth v. Bradley*, 501 Pa. 25, 459 A.2d 733 (Pa.1983), and *Commonwealth v. Mosley*, 535 Pa. 549, 637 A.2d 246 (Pa.1993)). As such, appellant was required to demonstrate prejudice, which he failed to do. Further, the Superior Court held that barring

10

counsel during the supplemental instructions did not create a presumption of prejudice because appellant did not suffer a complete denial of counsel; he was only denied counsel during supplemental jury instructions. The Superior Court affirmed the verdicts, but vacated the sentences for want of an adequate pre-sentence investigation.

■ Review of the Superior Court's decision was granted to determine whether appellant's rights under the Sixth and Fourteenth Amendments of the United States Constitution, Article I, § 9 of the Pennsylvania Constitution, and Pennsylvania Rule of Criminal Procedure 647(C)[1] were violated. The Commonwealth contends the instructions were tantamount to *ex parte* communications between the judge and jury, subject to a harmless error analysis. Appellant argues that barring him and his counsel from being present during the instructions deprived him of his right to a fair trial; therefore, the error is reversible and a new trial is required.

■ *Argo v. Goodstein*, 424 Pa. 612, 228 A.2d 195 (Pa.1967), established a *per se* rule regarding *ex parte* discussions between a trial judge and the jury: "Any intercourse between the trial judge and deliberating jury, no matter how innocuous, had in the absence of counsel mandates the grant of a new trial even in the absence of prejudice to either party." *Id.*, at 196. The rule of *Argo*, however, was expressly abolished in *Commonwealth v. Bradley*, 501 Pa. 25, 459 A.2d 733 (Pa.1983), and supplanted with a rule requiring establishment of a "reasonable likelihood of prejudice" before reversal was warranted. *Id.*, at 739. In *Commonwealth v. Elmore*, 508 Pa.

1. After the jury has retired to consider its verdict, additional or correctional instructions may be given by the trial judge in the presence of all parties, except that the defendant's absence without cause shall not preclude proceeding, as provided in Rule 602.
Pa.R.Crim.P. 647(C). The Rules further provide:
The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict and the imposition of sentence.
Pa.R.Crim.P. 602(A).

81, 494 A.2d 1050 (Pa.1985), this Court considered an incidental communication between a tipstaff and a juror-the foreperson asked if the jury could have a copy of a transcript and the tipstaff denied the request without reporting it to the trial court. This Court held "the [*Commonwealth v.*] *Story* [, 476 Pa. 391, 383 A.2d 155 (Pa.1978),] analysis must be employed in a *Bradley*-type case as in other instances of trial error." *Id.,* at 1052.[2] The incidental communication in *Elmore* was deemed harmless.

In *Commonwealth v. Mosley,* 535 Pa. 549, 637 A.2d 246 (Pa.1993), the "reasonable likelihood of prejudice" rule of *Bradley* was merged with the test in *Story.* In *Mosley,* a juror and a witness had an *ex parte* conversation during the trial. The defendant filed a motion to disqualify the juror, but the juror never testified. This Court again rejected a *per se* rule, but agreed the encounter "may have the improper effect of enhancing the credibility of the witness in the eyes of the juror." *Id.,* at 250. Applying the harmless error test of *Story,* this Court could not determine "with any degree of certainty that the contact ... in some way influenced the outcome of the trial ...," because there was a lack of juror testimony. *Mosley,* at 250. Consequently, the defendant was granted a new trial.

Accordingly, the Commonwealth argues, the trial court's reiterative jury instructions in the absence of appellant and counsel should be evaluated under a harmless error standard. *See also Commonwealth v. Berrigan,* 369 Pa.Super. 145, 535 A.2d 91, 102–03 (Pa.Super.1987) (court's *ex parte* communication with jury not reversible error, absent prejudice). Here, appellant's counsel participated in the formulation of the initial jury instructions; counsel's request for a self-defense instruction for the assault charge was granted. N.T., 10/15/98, at 108–09. The trial court provided the jury with comprehensive instructions during which counsel was present. *Id.,* at 111–34.

2. *Story* set forth the harmless error standard: "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Id.,* at 162. Whenever there is a reasonable possibility an error might have contributed to the conviction, the error is not harmless. *Id.,* at 164.

When the jury reconvened outside the presence of counsel, the court reiterated portions of the original instructions and refused to answer a juror's question. All interaction between the judge and jury was stenographically recorded.[3]

In the narrow context of incidental *ex parte* communications, the Commonwealth's argument is persuasive, and the trial court's actions appear harmless. In *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), the United States Supreme Court stated, "it is virtually impossible to shield jurors from every contact or influence . . .," and these *ex parte* communications are "day-to-day realities of courtroom life. . . ." *Id.*, at 118–19, 104 S.Ct. 453. However, here the trial court's communication with the jury was not merely incidental; the court's *ex parte* communications concerned a critical part of the trial implicating a panoply of constitutional rights.

 We admonish the exclusion of appellant's counsel during reiterative jury instructions, notwithstanding the trial court's well-intentioned purpose of promoting judicial efficiency. *See Commonwealth v. Gabel*, 79 Pa.Super. 59, 1922 WL 2852, at *2 (Pa.Super.1922) ("Promptness in the administration of justice is commendable, but haste which disregards fundamental principles may prove disastrous."). A person accused of a crime and the subject of a criminal prosecution has a constitutional right to counsel pursuant to the Sixth Amendment of the United States Constitution and Article I, § 9 of the Pennsylvania Constitution. *See, e.g., Commonwealth v. Arroyo*, 555 Pa. 125, 723 A.2d 162 (Pa.1999). "An

---

**3.** In *Commonwealth v. Katz*, 138 Pa.Super. 50, 10 A.2d 49 (Pa.Super.1939), the Superior Court considered whether a trial court's general charge to the entire panel of jurors prior to the start of trial, in the absence of the accused and his counsel, violated the accused's rights under Article I, § 9. The instructions pertained to general principles of law, including the doctrine of reasonable doubt. The court reaffirmed its holding in *Commonwealth v. Cohen*, 133 Pa.Super. 437, 2 A.2d 560 (Pa.Super.1938), in which a general charge delivered on a previous occasion in the absence of the accused and his counsel violated Article I, § 9. However, the Superior Court distinguished *Cohen* because the general charge in *Katz* was reported stenographically. *See Katz*, at 52–53 (concluding no violation of Art. 1, § 9) (*cited* in *Commonwealth v. Wiener*, 340 Pa. 369, 376, 17 A.2d 357 (Pa.1941)).

accused's right to be represented by counsel is a fundamental component of our criminal justice system." *United States v. Cronic,* 466 U.S. 648, 653, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *see also Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (accused "requires the guiding hand of counsel at every step in the proceedings against him.").

This right of counsel's presence is required at every stage of a criminal proceeding where substantive rights of the accused may be affected. *See, e.g., Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (*per curiam order* ); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101, 105 (Pa.1978) ("There is no doubt that the right of counsel applies to all 'critical stages' of a criminal proceeding."). A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage. *See Mempa,* at 135, 88 S.Ct. 254 (right to counsel in probation revocation); *Commonwealth v. Phillips,* 208 Pa.Super. 121, 220 A.2d 345, 348 (Pa.Super.1966), *aff'd. per curiam,* 424 Pa. 641, 226 A.2d 863 (Pa.1967). In Pennsylvania, trial courts have broad discretion in phrasing their charges, *Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 511 (Pa. 1997); during this stage, counsel may object to the instructions or suggest an alternative wording. As such, jury instructions are a "critical stage" in a criminal trial. *See, e.g., Rogers v. United States,* 422 U.S. 35, 38–39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Siverson v. O'Leary,* 764 F.2d 1208, 1214 (7th Cir.1985); *Ellis v. United States,* 313 F.3d 636, 642–43 (1st Cir.2002); *see also Commonwealth v. Baker,* 511 Pa. 1, 511 A.2d 777, 789 n. 8 (Pa.1986) (in *dicta,* stating defendant did not receive representation by counsel when trial judge sent jury back for further deliberations without notice and consultation of counsel).

Here, appellant's counsel had the opportunity to respond to the proposed instructions, but the question remains

14

whether the right to counsel during a critical stage of jury instructions extends to the actual face-to-face presence when the jury is instructed. In an adversarial setting, counsel must be present to represent the accused's interests, protect his constitutional rights, and ensure he receives a fair trial. The fact appellant was not completely denied counsel is irrelevant. "[A]lthough this deprivation was short-lived, it occurred during a vital point in the trial and was, within its terms, total." *Curtis v. Duval,* 124 F.3d 1, 5 (1st Cir.1997) (discussing jury instructions by trial court without consultation, and in absence, of defendant's counsel). Similarly, the scope of inquiry is not how long the right to counsel was denied, but *when* the right to counsel was denied, *i.e.,* during a critical stage. Regardless of whether the instructions were initial, supplemental, or reiterative, the deliberate exclusion of counsel when the jury is being instructed on the law of the case impugns the fairness and impartiality of the trial itself. *See Shields v. United States,* 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927) (accused had right under "rule of orderly conduct of jury trial" to be present for supplemental jury instructions).

A sterile transcript may lend some manner of reassurance appellant was not harmed by the content of the instructions, but this *post hoc* consolation cannot substitute for appellant's constitutional right to counsel. Counsel's presence is critical; criminal trials are not conducted in a vacuum, and counsel's presence guards against the risk of a biased jury:

It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment-the right of the accused to a speedy and public trial by an impartial jury, his right to be informed of the nature and cause of the accusation, and his right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor.

The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution.

*United States v. Wade,* 388 U.S. 218, 226–27, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (footnotes omitted).

Appellant's Sixth Amendment right to counsel's presence attached during the presentation of jury instructions. *See Arroyo,* at 170 (right to counsel under Art. I, § 9 of Pa. Constitution coterminous with Sixth Amendment for determining when right attaches). Given the denial of appellant's constitutional right to counsel during this critical stage, the remaining issue is whether the error warrants a new trial. In *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court adopted the general rule that constitutional errors do not require automatic reversal, and may be subject a harmless error analysis. However, the Court expressly held "some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *See id.,* at 23 & n. 8, 87 S.Ct. 824 (citing right to counsel as one such right). In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Court identified three situations which are so likely to prejudice a defendant that prejudice is presumed: (1) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; (2) counsel is called upon to render assistance under circumstances where competent counsel very likely could not provide such assistance; and (3) a complete denial of counsel at a critical stage of a criminal proceeding. *See Bell v. Cone,* 535 U.S. 685, 695–96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (discussing *Cronic*).

Here, the performance of counsel is not implicated, for counsel timely objected to the exclusion. Circumstances were not as those discussed in cases such as *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where counsel was appointed on the day of a capital trial. Instead, this matter involves a complete, if temporary, denial of counsel by the trial court during reiterative jury instructions, a critical stage of

16

appellant's trial. Accordingly, this Court is required to presume appellant was prejudiced. *See also Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (court order directing defendant not to consult with his attorney during overnight recess *per se* violated Sixth Amendment right to counsel); *Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ("The existence of such defects-deprivation of the right to counsel, for example—requires automatic reversal of the conviction because they infect the entire trial process.") (footnote omitted).[4]

The decision of the Superior Court is reversed and this matter is remanded for a new trial. Jurisdiction relinquished.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

4. Based on this conclusion, this Court need not address appellant's remaining issues.