J-S28022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARKESE DENASHAWN LAMPLEY | : | |
| | : | |
| Appellant | : | No. 693 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 18, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000597-2020

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED: July 9, 2024**

Appellant, Markese Denashawn Lampley, appeals from the August 18, 2021 judgment of sentence entered in the Court of Common Pleas of Erie County that imposed an aggregate sentence of life imprisonment without the possibility of parole to be followed by 13 to 44 years' incarceration. After careful review, we affirm.

We previously noted the procedural history as follows:

On April 15, 2020, the Commonwealth[,] by way of information, charged Appellant with numerous criminal offenses under the Crimes Code and several summary offenses under the Vehicle Code for events occurring on January 25, 2020. On August 7, 2020, Appellant through appointed counsel, Bruce G. Sandmeyer, Esquire ("Attorney Sandmeyer") filed an *omnibus* pre-trial motion seeking a change of venue, a change of venire, a motion for dismissal, and a petition for *writ* of *habeas corpus*. Appellant's motions were denied on August 31, 2020. On November 2, 2020, Appellant privately retained Jason E. Nard, Esquire ("Attorney

---

* Former Justice specially assigned to the Superior Court.

Nard"). On June 16, 2021, a status conference was held to discuss the motion *in limine* that was filed by Attorney Nard, on behalf of Appellant, seeking to exclude photographs of the deceased victim, photographs taken at the victim's autopsy, and a letter written by Appellant to a magisterial district judge. Prior to the hearing, the Commonwealth filed a response to Appellant's motion *in limine* regarding the letter to the magisterial district judge. The trial court determined that the letter was admissible under Pennsylvania Rule of Evidence 901(b)(4) and incorporated the Commonwealth's legal arguments in its order. On June 17, 2021, the Commonwealth filed a motion to amend information, seeking to withdraw several criminal charges and also to amend a spelling error of the last name of the deceased victim. That same day, the trial court granted the Commonwealth's motion.

With the jury trial quickly approaching, on June 16, 2021, Attorney Nard informed the trial court that Appellant unexpectedly decided he wanted to proceed *pro se* at trial. On June 21, 2021, the trial court held a **Grazier**[1] hearing. At the hearing, the trial court provided a brief summary of the history of the case. Attorney Nard stated he met with Appellant on Wednesday, June 16, 2021, and was informed Appellant no longer wished to retain his services. Appellant provided the trial court with a "*Pro Se* Notice" and requested he be addressed as "Mileage Galor Bey". Attorney Nard stated that Appellant had been cooperative throughout the entirety of the proceedings since Attorney Nard was retained in November 2020, until June 16, 2021. Four days before the start of his trial, Appellant proclaimed himself to be a sovereign citizen and incorrectly stated the trial court lacked authority and jurisdiction over him. After an exhaustive colloquy with Appellant, the trial court found that Appellant knowingly, voluntarily, and intelligently, relinquished his right to be represented by counsel. Appellant even stated to the trial court that: "it's my choice." Once satisfied with Appellant's waiver, the trial court appointed Attorney Nard to act as standby counsel. Appellant agreed with the appointment of Attorney Nard as standby counsel. The trial started with jury selection on June 24, 2021.

Footnote 1: **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

On July 2, 2021, after a four-day jury trial, Appellant was found guilty of murder of the second degree (Count 2), 3 counts of aggravated assault - serious bodily injury (Counts 3 - 5), robbery - inflicts serious bodily injury (Count 6), possessing

instruments of crime (Count 11), 2 counts of simple assault - fear of imminent serious bodily injury (Counts 13 and 14), 6 counts of recklessly endangering another person (Counts 15 - 18, 20, and 21), and fleeing or attempting to elude police officer (Count 10).[2] Additionally, the trial court found Appellant guilty of 10 summary motor vehicle offenses.[3]

Footnote 2: 18 Pa.C.S.A. §§ 2502(b), 2702(a)(1), 3701(a)(1)(i), 907(b), 2701(a)(3), 2705, as well as 75 Pa.C.S.A. § 3733(a), respectively.

Footnote 3: The 10 summary offenses were unauthorized transfer or use of registration (Count 22), traffic-control signals - steady red indication (Count 24), driving on right side of roadway (Count 25), driving on roadways laned for traffic - driving within single lane (Count 26), stop signs and yield signs - duties at stop signs (Count 27), turning movements and required signals (Count 28), driving vehicle at safe speed (Count 29), careless driving (Count 30), reckless driving (Count 31), and windshield obstructions and wipers - sun screening and other materials prohibited (Count 32). 75 Pa.C.S.A. §§ 1372(3), 3112(a)(3)(i), 3301(a), 3309(1), 3323(b), 3334(a), 3361, 3714(a), 3736(a), and 4524(e)(1), respectively.

On August 18, 2021, after consideration of the pre-sentence investigation report, 42 Pa.C.S.A. § 9721(b) regarding rehabilitation potential, the gravity of the offense, the impact on the community and the victims, the need to protect the public, and the sentencing guidelines, the trial court imposed, *inter alia*, a sentence of life in prison without parole and 13 to 44 years' incarceration, with the aggregate term of incarceration imposed at Counts 3 - 6, 10, 11, 13 - 18, 20, and 21 set to run consecutively to the sentence of life in prison imposed at Count 2.

On August 30, 2021, Appellant filed a post-sentence motion claiming that because he was a sovereign citizen, the trial court lacked jurisdiction over him, and asserted what the trial court gleaned as challenges to the judgment of sentence imposed by the trial court on August 18, 2021. On September 2, 2021, the trial court denied Appellant's post-sentence motion. In so doing, the trial court held that Appellant's sovereign citizen claim was frivolous and his other claims lacked legal merit. On September 7, 2021, Appellant filed *pro se* a "Notice Requesting Leave to Supplement Post-Sentence Notice for New Trial" dated September

6, 2021. Appellant alleged the Commonwealth never filed a motion to amend the criminal information and added additional charges, violating Pennsylvania Rule of Criminal Procedure 564. The trial court found Appellant's claims to be "factually inaccurate" as the Commonwealth did file a motion to amend the information on June 17, 2021, and no new charges were added. In fact, the Commonwealth withdrew several charges. Consequently, Appellant's motion was denied.

On May 6, 2022, Appellant filed a "Motion to Reinstate Appellate Rights *Nunc Pro Tunc*." Due to the unique facts surrounding this case (Appellant proceeding *pro se* at trial and claiming sovereign citizenship) and out of deference to Appellant, the trial court granted Appellant's motion. Appellant filed his "Statement of Errors Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b)" and alleged the weight and sufficiency of the evidence were insufficient to support the verdicts. During this time, Appellant was proceeding *pro se*. Under [a] directive from this Court, the trial court held a ***Grazier*** hearing in order to determine whether Appellant wished to continue his appeal *pro se*. Appellant immediately requested to be assisted by counsel, and on July 20, 2022, the trial court appointed Jessica A. Fiscus, Esquire ("Attorney Fiscus").

***Commonwealth v. Lampley***, 2024 WL 1155936, *1-*3 (Pa Super. filed Mar. 18, 2024) (non-precedential memorandum) (original brackets omitted), *citing*

**Commonwealth v. Lampley**, 2023 WL 8234316, at *1-*2 (Pa. Super. filed Nov. 28, 2023) (non-precedential memorandum).

On appeal, Appellant raised the following issues for our review:

[1.] Did the trial court err when it permitted Appellant to proceed *pro se* at the time of trial where the waiver colloquy does not reveal that Appellant made a knowing, voluntary, and intelligent waiver of counsel?

[2.] Did the trial court violate Appellant's federal and state constitutional right to self-representation when it adopted a practice of standby counsel acting as a "liaison" for Appellant at multiple sidebars and in-chambers discussions rather than allowing Appellant to speak for and represent

- 4 -

himself as, on many of these occasions, the trial court received evidence, heard argument, [or] made decisions on evidentiary issues [or] issues affecting Appellant's fundamental rights as an accused person?

[3.] Is the evidence insufficient to sustain the convictions for aggravated assault, as to [two of the victims], where the evidence of record, viewed in the light most favorable to the Commonwealth, did not demonstrate that Appellant had the specific intent to inflict serious bodily injury on either of them?

Appellant's Brief at 11 (extraneous capitalization omitted).[1]

On November 28, 2023, we remanded this case because it was "unclear whether the trial court conducted a waiver of colloquy in accordance with [Pennsylvania Rule of Criminal Procedure] 121." *Lampley*, 2023 WL 8234316, at *12. "In particular, we [were] unable to discern, based upon [the] record [then before us], whether Appellant was appropriately and sufficiently advised of the elements of each crime." *Id.*

On remand, the trial court conducted an evidentiary hearing on December 15, 2023, and promptly returned the certified record to this Court. Upon review, we found that "Appellant validly waived his right to assistance of counsel and that there was sufficient evident to support Appellant's convictions of aggravated assault[.]" *Lampley*, 2024 WL 1155936, at *18. In addressing Appellant's assertion that his "right to self-representation was violated when the trial court conducted [] *voir dire* of an empaneled jury member prior to the start of trial outside Appellant's presence," we found that

_____

[1] For ease of disposition, Appellant's issues have been reorganized.

it was "clear that Appellant did not participate in the supplemental *voir dire* of alternate juror #1." **Id.** at *14, *16. Based upon the record then before us, it was unclear, however, "whether standby counsel conferred with Appellant after the supplemental *voir dire* process and [whether] Appellant agreed to the trial court's decision to retain alternate juror #1." **Id.** at *16 (explaining, "[w]hether Appellant was advised by Attorney Nard as to what occurred during the supplemental *voir dire* of alternate juror #1 and whether Appellant, if so advised, lodged no objection to what took place is critical to the analysis of whether Appellant is entitled to relief"). As such, we were constrained to remand the case for the sole purpose of "determin[ing] whether Attorney Nard, as standby counsel, conferred with Appellant after the supplemental *voir dire* of alternate juror #1 and, if he so conferred with Appellant, whether Appellant ratified standby counsel's participation at the supplemental examination on Appellant's behalf, and whether Appellant made no objection to the trial court's decision to retain alternate juror #1." **Id.** at *18.

On remand, the trial court conducted an evidentiary hearing on April 12, 2024, limited to the aforementioned sole issue, and promptly returned the certified record to this Court. In its second supplemental Rule 1925(a) opinion, the trial court stated,

> In the case *sub judice*, the trial court finds Attorney Nard's testimony credible. Attorney Nard, as an officer of the court, has been practicing law for more than twenty years. Attorney Nard's responses were candid, unrehearsed, and his testimony was unrebutted. He remained consistent that he kept Appellant informed of every matter throughout the entire trial. Attorney Nard's role in this matter demonstrated that he and Appellant had

- 6 -

open communication from when Appellant initially retained Attorney Nard in November 2020[,] through trial. Attorney Nard was confident that if Appellant had any issue[,] he would have brought it to Attorney Nard's attention. At every instance, the record supports Attorney Nard's testimony that Appellant agreed with his role as standby counsel. Appellant invited substantial participation by Attorney Nard when he consented to have Attorney Nard make appearances on his behalf at sidebar and in chambers. As demonstrated below, Appellant never objected to Attorney Nard's participation as standby counsel and never requested that standby counsel be "silenced."

[Trial Court:]     Did you continue to be a court liaison for [Appellant] throughout the case?

[Attorney Nard:]     I did.

[Trial Court:]     And did he ever object to your role as supplying him with information in the case?

[Attorney Nard:     Appellant], no.

N.T.[,] 04/12/24, at 42.

[Trial Court:]     But my point is, when you came back out and informed him of the general nature of this discussion, was there time for him to object, first of all, to your role in going back there?

[Attorney Nard:]     When we came out, certainly. I mean, it takes a few seconds.

[Trial Court:]     Right. And the [trial] court spoke to [Appellant] again. At no time does the record reflect that he objected. Would this also be in line or corroborate your testimony that he never expressed an objection to you to stop being standby counsel?

[Attorney Nard:]     Yes, I don't recall him ever voicing an objection, for lack of a better phrase.

[Trial Court:]     So, did he, throughout the time of June 17[, 2021,] when you were appointed

standby, did he continue to acquiesce to you being in communication with him, going into the room with [alternate juror #1] for less than 15 minutes, participation in sidebars, jury instructions, verdict slips, was that a continuing agreement he had?

[Attorney Nard:] Yes, it was a continuing agreement.

[*Id.*] at 54.

Again, after appointment of Attorney Nard as standby counsel, Appellant never once objected to Attorney Nard's limited role as serving as a court liaison. Attorney Nard was emphatic that he constantly kept Appellant apprised of all discussions between the trial court and the Commonwealth. This included, *inter alia*, sidebar discussions, in[-]chamber discussions regarding jury instructions, discussion of the proposed verdict slips, and, importantly, the discussion regarding the supplemental *voir dire* of alternate juror #1. A reference to the transcript from Appellant's sentencing on August 18, 2021, adds further credibility to Attorney Nard's testimony and illustrates the open relationship between Appellant and Attorney Nard. At Appellant's sentencing, the trial court permitted Attorney Nard to express to the [trial] court the sympathy Appellant had conveyed to him. This was further evidence of the relationship between Appellant and Attorney Nard which again corroborated the open communication he maintained with Appellant in this case. At Appellant's sentencing, the trial court asked Attorney Nard the following:

[Trial Court:] All right. And was, per my instruction and your involvement, again reaffirming, was [Appellant] kept apprised of every situation, every sidebar, every legal argument[,] and stage of this procedure?

[Attorney Nard:] I do believe that to be very true, Your Honor. There were extensive efforts from all parties involved; that being the Commonwealth, [the trial] court, as well as myself.

N.T.[, 8/18/21], at 52.

Without Appellant "expressly" and "unambiguously" requesting standby counsel to be "silenced," all appearances by Attorney Nard are presumed to be within Appellant's acquiescence. Appellant never requested Attorney Nard to be "silenced" nor did he object to his role as standby counsel at any time.

Following Attorney Nard's testimony, Attorney Fiscus called Appellant to testify. Appellant testified that he had only learned of Attorney Nard's participation [in] the supplemental *voir dire* after Appellant received his trial transcripts. Despite the record reflecting the contrary, Appellant testified as follows:

> [Trial Court:]     And then [Attorney Nard] testified he came out and told you. So, here is my question: So, after he came back out to [the] court[room], is it your testimony that he just sat down and didn't say anything to you?
>
> [Appellant:]     Correct.
>
> [Trial Court:]     Nothing?
>
> [Appellant:]     Nothing about no proceeding, no supplemental *voir dire*. Nothing.

N.T.[,] 04/12/24, at 63.

> [Trial Court:]     So, when [Attorney Nard] testified that he did and when he testified that he came out and told you about [alternate juror #1] and her thinking she knew somebody or the general nature of it, is he mistaken or is he wrong?
>
> [Appellant:]     Yes, yes.
>
> [Trial Court:]     He's not telling the truth?
>
> [Appellant:]     Couldn't be.

[***Id.***] at 67.

Again, the trial court does not find this testimony credible. Appellant's testimony was borne out of convenience and is viewed as self-serving and advanced by an individual serving a life sentence. Appellant's testimony is desperate and contrary to his

actions throughout the trial wherein he embraced Attorney Nard's role as standby counsel.

Second Supplemental Trial Court Opinion, 5/8/24, at 5-8 (extraneous capitalization, case citations, some record citations, some quotation marks, and original brackets omitted).

Appellant's claim that the trial court violated his constitutionally protected right to self-representation in a criminal trial, as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, when the trial court conducted a supplemental *voir dire* of alternate juror #1 outside Appellant's presence raises a question of law. As with all questions of law, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Lucarelli**, 971 A.2d 1173, 1178 (Pa. 2009).

As we previously stated,

"Counsel's presence is required at every stage of a criminal proceeding where substantive rights of the accused may be affected." **Commonwealth v. Johnson**, 828 A.2d 1009, 1014 (Pa. 2003). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." **Id.** "*Voir dire* is a critical stage of a criminal proceeding." **Commonwealth v. Hunsberger**, 58 A.3d 32, 37 (Pa. 2012); **see also Commonwealth v. Ellison**, 902 A.2d 419, 423 (Pa. 2006) (stating, "a criminal defendant's right to an impartial jury is explicitly granted by Article I, Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution, and the jury selection process is crucial to the preservation of that right"); **Commonwealth v. Le**, 208 A.3d 960, 972 (Pa. 2019) (stating, "to enable a defendant to enforce his, or her[,] constitutional right to an impartial jury, he, or she, must be afforded an adequate *voir dire* to identify unqualified

- 10 -

jurors" (original brackets omitted)).  As such, counsel's presence is required at *voir dire*.  ***Hunsberger***, 58 A.3d at 37; ***see also Johnson***, 828 A.2d at 1014.  Therefore, logically, in the case of a *pro se* defendant, the defendant's presence, as his[, or her,] own legal representative, is required at all stages of *voir dire* in order to properly vindicate the defendant's right of self-representation in the process of selecting a fair and impartial jury.  ***See McKaskle***[ ***v. Wiggins***], 465 U.S. [168,] 174 [(1984)] (stating that, a defendant's right to self-representation "plainly encompasses" the right to, *inter alia*, participate in *voir dire*); ***see also Hunsberger***, 58 A.3d at 37; ***Johnson***, 828 A.2d at 1014; [***Commonwealth v.***] ***Spotz***, 47 A.3d [63,] 83 [(Pa. 2012)] (stating that, "when a defendant elects to proceed at trial *pro se*, the defendant - and not standby counsel - is in fact counsel of record and is responsible for trying the case").

***Lampley***, 2024 WL 1155936, at *14 (original brackets and footnote omitted).

Based upon the record then before us, we found that

On June 28, 2021, prior to the jury members being sworn in, and prior to the start of trial, the trial court conducted *voir dire* of an empaneled juror, alternate juror #1, to determine whether the juror knew one of the law enforcement officers that was expected to testify at trial on behalf of the Commonwealth.[12]   N.T., 6/28/21, at 4-9.  At the outset of this *voir dire*, the trial court represented that the Commonwealth and standby counsel were present in the jury room.  ***Id.*** at 4.  Appellant was not present.  ***Id.***

[Footnote 12:]  The *voir dire* of alternate juror #1 occurred in the jury room.  N.T., 6/28/21, at 4.

The trial court began by explaining the need for further *voir dire* as follows:

Last night (June 27, 2021,) our tip staff had connection with alternate juror #1.  Alternate juror #1 expressed concern that there was a name that she may have been familiar with and I'll let her explain and the name was Cody Krahe.  I have the spelling as K-R-A-H-E.

Now, I spoke informally with alternate juror #1 this morning in the presence of my law clerk, and we had looked at the witness list - the lay witness list not knowing that Cody

- 11 -

Krahe is a Pennsylvania State Trooper. So on our lay witness list, there is no Cody Krahe. There is a Cody, but it's a different last name.

We then dismissed alternate juror #1. I informed counsel, but then it was bought to my attention that there was a Trooper Cody Krahe. So I thought it was prudent that we put this on the record with those of us assembled here and now just follow it up. Okay.

*Id.* at 4-5. The trial court then proceeded to inquire of alternate juror #1 regarding her connection with Trooper Krahe.[13] After the trial court concluded its questioning of alternate juror #1, the Commonwealth declined to ask any additional questions. *Id.* at 7. Standby counsel, however, asked the juror several questions "out of an abundance of caution on behalf of Appellant."[14] *Id.* At the conclusion of the *voir dire*, the trial court did not excuse alternate juror #1 from serving on the jury, stating,

I don't think there's any reason why alternate juror #1 should be disrupted or removed. She's absolutely - actually, she did everything we want her to do. She went out of an abundance of caution. You're to be commended for that. She knew the name was in her mind, not knowing where. Now I think we do know what refreshed your recollection from that Thursday and seeing it in this questionnaire. But based on those responses and your commitment to be fair and impartial, I'm satisfied with that.

*Id.* at 9.

[Footnote 13:] Alternate juror #1 explained that she did not know Trooper Krahe personally but, rather, knew his wife, who was the owner of the gym where alternate juror #1 belonged. N.T., 6/28/21, at 5-6. Alternate juror #1 stated that she did not socialize with the wife and "probably [has not] seen her in person in probably years." *Id.* at 6.

[Footnote 14:] Prior to questioning alternate juror #1, standby counsel stated, "I'm kind of in an odd position," to which the trial court responded, "I know." N.T., 6/28/21, at 7.

Upon returning to the courtroom where Appellant was waiting, the trial court did not explain to Appellant on the record the supplemental *voir dire* of alternate juror #1 or the trial court's

decision following the *voir dire*. ***Id.*** at 9-10.  Instead, the trial court reaffirmed Appellant's commitment to represent himself at trial. ***Id.*** at 10-18.  Thereafter, the jury entered the courtroom and was sworn in prior to the start of trial. ***Id.*** at 19.

***Lampley***, 2024 WL 1155936, at *15 (original brackets omitted).

As discussed *supra*, we remanded this case for the trial court to examine whether Attorney Nard, after returning to the courtroom, conferred with Appellant about the supplemental *voir dire* of alternate juror #1 and, if he did so confer, whether Appellant ratified Attorney Nard's participation in the supplemental *voir dire* on Appellant's behalf and whether Appellant made no objection to the trial court's decision to retain alternate juror #1.

At the April 12, 2024 evidentiary hearing, Attorney Nard testified that after being appointed standby counsel, he "maintain[ed] communication [and open discussions] with [Appellant.]"  N.T., 4/12/24, at 17.  Attorney Nard explained that during Appellant's trial, he participated as standby counsel in such things as sidebar conferences and verdict slip discussions and that he "continually inform[ed Appellant] of what was discussed with the [trial c]ourt" regardless of whether the discussion occurred at sidebar or in chambers. ***Id.***  Concerning the supplemental *voir dire* of alternate juror #1, the following dialogue occurred between the trial court and Attorney Nard at the evidentiary hearing:

[Trial Court:]          And then, this is what I want to ask you: Do you recall what happened when you went out [(left the supplemental *voir dire*)] and we came back into the courtroom and there was - we ended the discussion in the jury room, then I'm

- 13 -

asking you what, if anything, again, not specifically, but did you communicate that to [Appellant]?

[Attorney Nard:] I did. I didn't have - didn't go into a number of details or go over each occurrence that happened in there [(referring to the supplemental *voir dire*)], just what the – essentially what the result was and that there didn't appear -

[Trial Court:] Okay. And at that point, did he still agree or acquiesce to your being standby counsel?

[Attorney Nard:] Yes.

[Trial Court:] Did he ever object to you being standby counsel at any point, certainly during this time period?

[Attorney Nard:] No. Basically the reaction was like an "okay." I didn't ask the question, "do you have an objection" or anything like that, but I told - it was an acquiescence, he just kind of acknowledged "okay."

[Trial Court:] And did he have an objection to [alternate juror #1] that he expressed to you to the [trial] court's decision to keep her as an alternate?

[Attorney Nard:] No, not that I recall.

[Trial Court:] Okay. And if there was a basis for cause, would you have discussed that with him to remove her?

[Attorney Nard:] Yes. I would have brought it out before we ever came out of the [jury] room.

[Trial Court:] Okay. And you concurred with the [trial] court finding that there was nothing in her response that indicated anything differently from her [previous] responses[?]

- 14 -

| [Attorney Nard:] | Correct. |
|---|---|
| [Trial Court:] | Okay. The other part of that, after that discussion, do you recall the [trial c]ourt then asking – [Appellant] whether he continued to want to represent himself? Did he reaffirm that? |
| [Attorney Nard:] | I don't have a specific recollection on that. That happened a number of times throughout this event, I don't recall if it happened at that moment. |

*Id.* at 21-23. Attorney Nard confirmed that throughout the trial, Appellant never objected to Attorney Nard's participation as standby counsel. *Id.* at 25. Attorney Nard further explained that, based upon his working relationship with Appellant as standby counsel, if Appellant had an objection to Attorney Nard's participation, Appellant would have expressed that objection. *Id.* at 26. Attorney Nard agreed that upon returning to the courtroom and after his discussion with Appellant regarding the supplemental *voir dire*, there was ample opportunity for Appellant to object to Attorney Nard attending the supplemental *voir dire* on Appellant's behalf. *Id.* at 53. Attorney Nard stated that during his entire tenure as standby counsel, Appellant never expressed having a problem with Attorney Nard or objected to Attorney Nard's actions as standby counsel. *Id.* at 54.

When questioned by Appellant's counsel, Attorney Nard stated that he did not recall Appellant being "invited" to participate in the supplemental *voir dire*. *Id.* at 28. Attorney Nard further stated that he did not speak with Appellant, or inform Appellant, that he had a right to be present prior to the

occurrence of the supplemental *voir dire* of alternate juror #1. *Id.* Attorney Nard explained that after the supplemental *voir dire* and his return to the courtroom, his conversation with Appellant was

> very basic. Part of it was the – that I recall, things proceeded very quickly, I didn't have time to really sit down and go over the details of the questions that were asked or the necessary responses. And I'm trying to do this general without talking about the actual discussion sufficient to what you need. I know I had referenced the [police] officer wasn't actually known [by alternate juror #1], that there was knowledge of the wife, there didn't appear to be anything that would prevent [alternate juror #1] from - or cause her to have a bias. And I think I referenced [she was] an alternate, additionally. But that would have been the extent. I didn't have an opportunity to go over the details of what occurred.

*Id.* at 31. When asked why he felt like he was in an "odd position" during the supplemental *voir dire*, Attorney Nard explained,

> I think the lines of my involvement were somewhat blurred. I have an individual that was claiming sovereign citizenship, and while I was happy to interact, it just felt in that scenario for the questions, at least some needed to be asked, and I just felt it put me in an odd position because I was standby counsel, not trial counsel. I was trying not to overstep my bounds, that was kind of a blurred line, I think, throughout the process.
>
> I was doing everything I could to try to support his best interest, but it was unclear where the lines were to be drawn on there. That was even brought up during the trial by the District Attorney's office where I was trying to give information to [Appellant] to prepare for cross-examination of a witness, things of that nature. I thought it was proper and the district attorney did not for standby counsel. Just things of that nature.

*Id.* at 33-34. Attorney Nard stated that the exact basis for his saying he was in an odd position was because he no longer represented Appellant but was

- 16 -

questioning alternate juror #1 during *voir dire*. ***Id.*** at 34. Attorney Nard agreed, however, that he acted with Appellant's permission. ***Id.***

Appellant testified that he only learned of the supplemental *voir dire* at the conclusion of trial, after he was convicted, and after he received copies of the trial transcripts. ***Id.*** at 57. Appellant stated that on the day of the supplemental *voir dire*, Attorney Nard returned from "a meeting with the trial court" and just sat down at counsel table next to Appellant without saying anything to Appellant. ***Id.*** at 63. Appellant stated that he was "never on notice that something was happening" on the morning of the supplemental *voir dire* so he never questioned Attorney Nard as to where he was or what he was doing prior to Attorney Nard sitting down next to him. ***Id.*** at 63-64, 66. Appellant stated that Attorney Nard "couldn't be" telling the truth when he testified earlier at the April 12, 2024 evidentiary hearing that he returned from the supplemental *voir dire* and explained the general nature of the events to Appellant. ***Id.*** at 67.

Upon review, we concur with the trial court, and the record supports that Attorney Nard credibly testified that after the supplemental *voir dire* of alternate juror #1 ended, he returned to the courtroom and explained the events that had just transpired. Attorney Nard stated at the evidentiary hearing that he recalled explaining to Appellant that alternate juror #1 knew the wife of a police officer who was listed as a potential witness to be called at trial but that alternate juror #1 did not know the police officer directly. Attorney Nard further testified that Appellant was "okay" with Attorney Nard's

participation in the supplemental *voir dire* and did not object to either Attorney Nard's participation or to the retention of alternate juror #1 at trial. Conversely, Appellant testified that Attorney Nard was not truthful in his recollection of events on the day in question concerning the supplemental *voir dire* and, in particular, that Attorney Nard did not have a conversation regarding the supplemental *voir dire* with Appellant upon returning to the courtroom. Instead, Appellant insisted that he only found out about the supplemental *voir dire* event upon receiving, and reviewing, copies of the trial transcripts several months after his conviction. We concur with the trial court, and the record supports, that Appellant's testimony is self-serving and contrary to the prior practice that Attorney Nard demonstrated throughout Appellant's trial. For example, as we found in our prior memorandum decision, Attorney Nard participated in an in-chambers discussion with the trial court and the Commonwealth regarding a proposed verdict slip. ***Lampley***, 2024 WL 1155936, at *13. This exchange occurred outside the presence of Appellant. ***Id.*** At the conclusion of the in-chambers meeting, Attorney Nard returned to the courtroom and discussed the proposed verdict slip with Appellant. ***Id.*** This demonstrates Attorney Nard's approach of discussing matters with Appellant.

Simply put, the evidence demonstrates that the trial court conducted a supplemental *voir dire* of alternative juror #1 outside the presence of Appellant, with only the trial court, the prospective juror, the Commonwealth and Attorney Nard present. Upon conclusion of this *voir dire*, Attorney Nard

returned to the courtroom and discussed the events with Appellant. Appellant did not raise an objection to Attorney Nard's participation in the supplemental *voir dire*, to Attorney Nard's continuing role as standby counsel, or to alternative juror #1 being seated in his trial. As such, we discern no violation of Appellant's right to self-representation.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/09/2024