J-S28022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARKESE DENASHAWN LAMPLEY | : | |
| | : | |
| Appellant | : | No. 693 WDA 2022 |

Appeal from the Judgment of Sentence Entered August 18, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000597-2020

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: MARCH 18, 2024**

Appellant, Markese Denashawn Lampley, appeals from the August 18, 2021 judgment of sentence entered in the Court of Common Pleas of Erie County that imposed an aggregate sentence of life imprisonment without the possibility of parole to be followed by 13 to 44 years' incarceration.  After careful review, we are constrained to remand this case for an evidentiary hearing, limited in scope, in accordance with this memorandum.

We previously noted the procedural history as follows:

On April 15, 2020, the Commonwealth by way of information, charged Appellant with numerous criminal offenses under the Crimes Code and several summary offenses under the Vehicle Code for events occurring on January 25, 2020.  On August 7, 2020, Appellant through appointed counsel, Bruce G. Sandmeyer, Esquire ("Attorney Sandmeyer") filed an *omnibus* pre-trial motion seeking a change of venue, a change of venire, a motion for dismissal, and a petition for *writ* of *habeas corpus*.  Appellant's

_____

[*] Former Justice specially assigned to the Superior Court.

motions were denied on August 31, 2020. On November 2, 2020, Appellant privately retained Jason E. Nard, Esquire ("Attorney Nard"). On June 16, 2021, a status conference was held to discuss the motion *in limine* that was filed by Attorney Nard, on behalf of Appellant, seeking to exclude photographs of the deceased victim, photographs taken at the victim's autopsy, and a letter written by Appellant to a magisterial district judge. Prior to the hearing, the Commonwealth filed a response to Appellant's motion *in limine* regarding the letter to the magisterial district judge. The trial court determined that the letter was admissible under Pennsylvania Rule of Evidence 901(b)(4) and incorporated the Commonwealth's legal arguments in its order. On June 17, 2021, the Commonwealth filed a motion to amend information[,] seeking to withdraw several criminal charges and also to amend a spelling error of the last name of the deceased victim. That same day, the trial court granted the Commonwealth's motion.

With the jury trial quickly approaching, on June 16, 2021, Attorney Nard informed the trial court that Appellant unexpectedly decided he wanted to proceed *pro se* at trial. On June 21, 2021, the trial court held a ***Grazier***[1] hearing. At the hearing, the trial court provided a brief summary of the history of the case. Attorney Nard stated he met with Appellant on Wednesday, June 16, 2021, and was informed Appellant no longer wished to retain his services. Appellant provided the trial court with a "*Pro Se* Notice" and requested he be addressed as "Mileage Galor Bey". Attorney Nard stated that Appellant had been cooperative throughout the entirety of the proceedings since Attorney Nard was retained in November 2020, until June 16, 2021. Four days before the start of his trial, Appellant proclaimed himself to be a sovereign citizen and incorrectly stated the trial court lacked authority and jurisdiction over him. After an exhaustive colloquy with Appellant, the trial court found that Appellant knowingly, voluntarily, and intelligently, relinquished his right to be represented by counsel. Appellant even stated to the trial court that: "it's my choice." Once satisfied with Appellant's waiver, the trial court appointed Attorney Nard to act as standby counsel. Appellant agreed with the appointment of Attorney Nard as standby counsel. The trial started with jury selection on June 24, 2021.

[Footnote 1:] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

On July 2, 2021, after a four-day jury trial, Appellant was found guilty of murder [of] the second degree (Count 2), 3 counts of

aggravated assault - serious bodily injury (Counts 3 - 5), robbery - inflicts serious bodily injury (Count 6), possessing instruments of crime (Count 11), 2 counts of simple assault - fear of imminent serious bodily injury (Counts 13 and 14), 6 counts of recklessly endangering another person (Counts 15 - 18, 20[,] and 21)[,] and fleeing or attempting to elude police officer (Count 10).[2] Additionally, the trial court found Appellant guilty of 10 summary motor vehicle offenses.[3]

[Footnote 2:] 18 Pa.C.S.A. §§ 2502(b), 2702(a)(1), 3701(a)(1)(i), 907(b), 2701(a)(3), 2705, as well as 75 Pa.C.S.A. § 3733(a), respectively.

[Footnote 3:] The 10 summary offenses were unauthorized transfer or use of registration (Count 22), traffic-control signals - steady red indication (Count 24), driving on right side of roadway (Count 25), driving on roadways laned for traffic - driving within single lane (Count 26), stop signs and yield signs - duties at stop signs (Count 27), turning movements and required signals (Count 28), driving vehicle at safe speed (Count 29), careless driving (Count 30), reckless driving (Count 31), and windshield obstructions and wipers - sun screening and other materials prohibited (Count 32). 75 Pa.C.S.A. §§ 1372(3), 3112(a)(3)(i), 3301(a), 3309(1), 3323(b), 3334(a), 3361, 3714(a), 3736(a), and 4524(e)(1), respectively.

On August 18, 2021, after consideration of the pre-sentence investigation report, 42 Pa.C.S.A. § 9721(b) regarding rehabilitation potential, the gravity of the offense, the impact on the community and the victims, the need to protect the public, and the sentencing guidelines, the trial court imposed, *inter alia*, a sentence of life in prison without parole and 13 to 44 years' incarceration, with the aggregate term of incarceration imposed at Counts 3 - 6, 10, 11, 13 - 18, 20, and 21 set to run consecutively to the sentence of life in prison imposed at Count 2.

On August 30, 2021, Appellant filed a post-sentence motion claiming that because he was a sovereign citizen, the trial court lacked jurisdiction over him, and asserted what the trial court gleaned as challenges to the judgment of sentence imposed by the trial court on August 18, 2021. On September 2, 2021, the trial court denied Appellant's post-sentence motion. In so doing, the trial court held that Appellant's sovereign citizen claim was frivolous and his other claims lacked legal merit. On September

7, 2021, Appellant filed *pro se* a "Notice Requesting Leave to Supplement Post-Sentence Notice for New Trial" dated September 6, 2021. Appellant alleged the Commonwealth never filed a motion to amend the criminal information and added additional charges, violating Pennsylvania Rule of Criminal Procedure 564. The trial court found Appellant's claims to be "factually inaccurate" as the Commonwealth did file a motion to amend the information on June 17, 2021, and no new charges were added. In fact, the Commonwealth withdrew several charges. Consequently, Appellant's motion was denied.

On May 6, 2022, Appellant filed a "Motion to Reinstate Appellate Rights *Nunc Pro Tunc*." Due to the unique facts surrounding this case (Appellant proceeding *pro se* at trial and claiming sovereign citizenship) and out of deference to Appellant, the trial court granted Appellant's motion. Appellant filed his "Statement of [Errors] Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b)" and alleged the weight and sufficiency of the evidence were insufficient to support the verdicts. During this time, Appellant was proceeding *pro se*. Under directive from this Court, the trial court held a **Grazier** hearing in order to determine whether Appellant wished to continue his appeal *pro se*. Appellant immediately requested to be assisted by counsel, and on July 20, 2022, the trial [court] appointed Jessica A. Fiscus, Esquire ("Attorney Fiscus").

*Commonwealth v. Lampley*, 2023 WL 8234316, at *1-*2 (Pa. Super. filed Nov. 28, 2023) (non-precedential memorandum) (original brackets and footnote omitted).

Appellant raises the following issues for our review:

[1.] Did the trial court err when it permitted Appellant to proceed *pro se* at the time of trial where the waiver colloquy does not reveal that Appellant made a knowing, voluntary, and intelligent waiver of counsel?

[2.] Did the trial court violate Appellant's federal and state constitutional right to self-representation when it adopted a practice of standby counsel acting as a "liaison" for Appellant at multiple sidebars and in-chambers discussions rather than allowing Appellant to speak for and represent

himself as, on many of these occasions, the trial court received evidence, heard argument, [or] made decisions on evidentiary issues [or] issues affecting Appellant's fundamental rights as an accused person?

[3.] Is the evidence insufficient to sustain the convictions for aggravated assault, as to [two of the victims], where the evidence of record, viewed in the light most favorable to the Commonwealth, did not demonstrate that Appellant had the specific intent to inflict serious bodily injury on either of them?

Appellant's Brief at 11 (extraneous capitalization omitted).[1]

In his first issue, Appellant asserts that his waiver of counsel was not knowingly, voluntarily, or intelligently provided because the "trial court clearly did not comply with the minimum, mandatory requirements of [Pennsylvania Rule of Criminal Procedure 121]" in conducting the waiver of counsel colloquy. *Id.* at 46. In particular, Appellant contends that (1) "the trial court never outlined the elements of the crimes [for which he was charged] in the colloquy" as required by Rule 121(A)(2)(b); (2) the trial court "never indicated that Appellant had the right to have free counsel appointed if he [were] indigent" as required by Rule 121(A)(2)(a); (3) trial court failed to advise Appellant that he may lose many rights permanently if not timely asserted as required by Rule 121(A)(2)(f); and (4) "the trial court did not identify with any particularity the summary offenses charged, incorrectly stated that [Appellant] faced ten rather than eleven [summary offenses], and did not

---

[1] For ease of disposition, Appellant's issues have been reorganized.

identify the maximum fine[s permitted] by statute" as required by Rule 121(A)(2)(b).

Because Appellant's claims require us to interpret Rule 121 and its colloquy requirements, these claims present a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Phillips*, 141 A.3d 512, 518 (Pa. Super. 2016), *appeal denied*, 161 A.3d 796 (Pa. 2016). It is well-established that

> an accused has a constitutional right to counsel during trial. While an accused may waive his constitutional right, such a waiver must be the free and unconstrained choice of its maker[] and also must be made knowingly and intelligently[.] To be a knowing and intelligent waiver[, the] defendant must be aware of both the right and of the risks of forfeiting that right.

*Commonwealth v. Tyler*, 360 A.2d 617, 620 (Pa. 1976) (citations and quotation marks omitted).

> The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Article [I], Section 9 of the Pennsylvania Constitution. When a defendant wishes to waive the right to counsel, the trial court is ultimately responsible for ensuring that the defendant is questioned about the six areas specified in Rule 121 and for determining whether the defendant is indeed making an informed and independent decision to waive counsel. Specifically, it is incumbent on the [trial] court to fully advise the accused of the nature and elements of the crime before accepting waiver of counsel. A penetrating and comprehensive colloquy is mandatory, regardless of the defendant's experience with the system. Failure to conduct a thorough, on-the-record colloquy before allowing a defendant to proceed to trial *pro se* constitutes reversible error on direct appeal.

*Commonwealth v. Isaac*, 205 A.3d 358, 363 (Pa. Super. 2019) (citations, footnote, original brackets, and quotation marks omitted), *appeal denied*, 217

A.3d 795 (Pa. 2019). The appointment of standby counsel does not cure a trial court's failure to conduct an effective waiver of counsel colloquy. *Commonwealth v. Floyd*, 257 A.3d 13, 18 (Pa. Super. 2020). Waiver of a constitutional right, such as the right to counsel, cannot be presumed from a silent record as it is well-established that the presumption must always be against the waiver of a constitutional right. *Commonwealth v. Norman*, 285 A.2d 523, 526 (Pa. 1971); *see also Commonwealth v. Murphy*, 214 A.3d 675, 679 (Pa. Super. 2019) (stating, "waiver cannot be presumed in a silent record"); *Commonwealth v. Johnson*, 158 A.3d 117, 121 (Pa. Super. 2017) (stating, "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights").

Rule 121(A)(2) states in pertinent part that

To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

   (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

   (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

   (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

   (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

- 7 -

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2)(a-f).

When reviewing a trial court's basic compliance with the requirements of Rule 121, we do not first apply a "totality of the circumstances" test. In this context, we look at the totality of the relevant circumstances **only after we decide the trial court has met the minimum requirements of Rule 121**, to determine whether the defendant's waiver of the constitutional right to counsel was a knowing, voluntary, and intelligent waiver.

*Commonwealth v. Phillips*, 93 A.3d 847, 853-854 (Pa. Super. 2014) (citations and footnote omitted; emphasis added). The trial court must make a "probing inquiry" into whether a defendant is knowingly, voluntarily, and intelligently waiving his or her right to counsel. *Commonwealth v. Clyburn*, 42 A.3d 296, 299 (Pa. Super. 2012); *see also Commonwealth v. Houtz*, 856 A.2d 119, 125 (Pa. Super. 2004) (reiterating that, a trial court must formally and searchingly inquire into the six areas covered by Rule 121); *Isaac*, 205 A.3d at 363 (stating, a "penetrating and comprehensive colloquy is mandatory" (citation and original quotation marks omitted)). "The 'probing colloquy' standard requires Pennsylvania trial courts to make a searching and formal inquiry into the questions of (1) whether the defendant is aware of his[, or her,] right to counsel or not and (2) whether the defendant is aware of the

consequences of waiving that right or not." ***Commonwealth v. Starr***, 664 A.2d 1326, 1335 (Pa. 1995).

It is incumbent upon the trial court to ensure that a defendant is aware of both the nature of his or her right to counsel and the risks and consequences of forgoing that constitutional right before finding that a defendant knowingly, voluntarily, and intelligently waived his or her right to counsel. ***Phillips***, 93 A.3d at 852. In addition to the six inquiry factors enumerated in Rule 121, the trial court must also inquire about a defendant's age, educational background, and basic comprehension skills in order to ensure that the defendant possesses the ability to understand the questions posed to him or her during the waiver colloquy. ***Commonwealth v. McDonough***, 812 A.2d 504, 507 n.1 (Pa. 2002); ***see also Phillips***, 93 A.3d at 853.

Regarding the Rule 121(A)(2)(b) factor – whether a defendant understands the nature of the charges against the defendant and the elements of each of those charges – the trial court must go beyond a mere inquiry of the defendant's understanding of the offenses. ***Phillips***, 93 A.3d at 853. In order to satisfy Rule 121(A)(2)(b), the trial court must "fully advise the [defendant] of the nature and elements of the crime before accepting the waiver of counsel." ***Id.*** (citation, original quotation marks, and original brackets omitted); ***see also Clyburn***, 42 A.3d at 299. The failure to fully advise a defendant of the elements of the crime constitutes reversible error. ***Phillips***, 93 A.3d at 854-855 (holding that, the failure to advise a defendant of the elements of the offenses constitutes error); ***see also Clyburn***, 42 A.3d

at 301 (stating that, Rule 121(A)(2)(b) requires the trial court to elicit from the defendant that he or she understands, *inter alia*, the elements of the offenses); ***Commonwealth v. Lasko***, 14 A.3d 168, 173 (Pa. Super. 2011) (stating that, a "full [waiver] colloquy was not conducted on the record as the trial court did not explain the elements of the crimes" but, rather, only orally explained the charges and the possible sentencing exposure); ***Commonwealth v. Floyd***, 257 A.3d 13, 18 (Pa. Super. 2020) (stating that, the waiver colloquy was deficient because the trial court did not advise the defendant of the elements of the charged offenses); ***Isaac***, 205 A.3d at 363 (noting that, a trial court's failure to inform a defendant of the elements of the charged offenses constitutes a deficient waiver colloquy); ***Commonwealth v. Hood***, 2022 WL 4090008, at \*6 (Pa. Super. filed Sept. 7, 2022) (non-precedential decision) (stating, the minimum requirements of Rule 121 are not satisfied when the trial court fails to, *inter alia*, ensure the defendant understood the elements of each charge). Moreover, a signed waiver form containing a perfunctory statement that the defendant agreed he or she was informed of the nature and elements of the crime but fails to list the charges and elements of each crime, does not cure an insufficient oral colloquy. ***Clyburn***, 42 A.3d at 301. Strict adherence to the mandatory requirements of Rule 121 is of import because a defendant may change his or her mind as to self-representation based upon the disclosures made, and information gained, during the waiver colloquy. ***Commonwealth v. Payson***, 723 A.2d 695, 703 (Pa. Super. 1999).

In the case *sub judice*, Appellant was charged with 21 criminal offenses under the Crimes Code and 11 summary offenses under the Vehicle Code. **See** Amended Information, 6/17/21. During his **Grazier** hearing on June 21, 2021, Appellant, having been presented with a waiver of counsel form that stated he had the right to counsel or to have counsel appointed if indigent,[2]

_____

[2] As part of the colloquy, Appellant executed a right to counsel waiver form in which he answered affirmatively ("yes") to the following questions:

1. Do you understand you have a right to be represented by an attorney, and a right to a free attorney if you can't afford one and you meet the eligibility requirements of the Erie County Public Defender's Office?

2. Do you know the nature and the elements of the charges against you?

3. Are you aware of the possible range of sentences, including fines and the maximum possible penalty that can be imposed, if you are found guilty or plead guilty?

4. Do you understand that if you represent yourself, you will still be required to follow all the rules of criminal procedure and evidence?

5. Do you understand that an attorney will be more familiar with these Rules than you?

6. Do you understand there may be defenses to these charges which counsel would be aware of?

7. Do you understand that if these defenses or other rights are not raised at the right time, they may be permanently lost?

8. Do you understand if errors or rule violations occur and you don't object to them at the right time you will lose your right to object permanently?

acknowledged that he understood his right to counsel. N.T., 6/21/21, at 25.

Appellant further acknowledged that he understood that he had certain rights,

including the right to object to errors or rule-based violations during trial that

would be lost if not timely raised. *Id.* at 26. The trial court informed Appellant

of the 21 offenses for which he was charged under the Crimes Code.[3] N.T.,

_____

> 9. Are you voluntarily giving up your right to be represented by
> an attorney?

Right to Counsel Waiver Form, 6/21/21. To the question - "Have you been forced or pressured in any way, or have promises been made to you that have influenced your decision to waive your right to be represented by an attorney" - Appellant answered "no." *Id.*

[3] The trial court misspoke when it indicated to Appellant that he had been charged with only 10 summary offenses under the Vehicle Code when, in fact, Appellant had been charged with 11 summary offenses. N.T., 6/21/21, at 24 (stating, "[t]here are **ten** violations of the [V]ehicle [C]ode charged as summaries" (emphasis added)).

When a defendant has been charged with summary offenses, neither the United States Constitution nor the Pennsylvania Constitution guarantees the defendant an absolute right to counsel. *Commonwealth v. Smith*, 868 A.2d 1253, 1256 (Pa. Super. 2005), *appeal denied*, 877 A.2d 462 (Pa. 2005). Rather, "[t]he right to counsel in summary cases attaches only to those defendants who are unable to employ counsel **when there is a likelihood that imprisonment will be imposed**." *Smith*, 868 A.2d at 1256 (citation and original quotation marks omitted; emphasis in original). When the only sentence provided for in a summary offense violation is a fine and costs, a defendant does not have a right to counsel. *Id.* Ergo, if no right to counsel attached, the trial court does not need to conduct a waiver of counsel colloquy before permitting a defendant to proceed *pro se* in defending against the summary offenses.

Here, the trial court indicated that Appellant's 11 summary charges were punishable by fines and costs. Therefore, Appellant had no right to counsel in

6/21/21, at 23. The trial court then proceeded to explain the potential penalties Appellant faced if convicted.[4] *Id.* at 23-24. The trial court did not, however, orally advise Appellant of the elements of each offense under the Crimes Code that the Commonwealth must prove beyond a reasonable doubt to convict Appellant.[5] Instead, the trial court asked Attorney Nard whether

_____

defending against those charges. As such, Appellant's challenge to the trial court's failure to satisfy the colloquy requirements of Rule 121 with regard to the summary offenses is without merit.

[4] The trial court identified the potential penalties according to the classification of the felony or misdemeanor, *i.e.*, felonies of the first degree carry a maximum penalty of 20 years' incarceration and a $25,000.00 fine, and misdemeanors of the first degree carry a maximum penalty of 5 years' incarceration and a $10,000.00 fine, rather than identifying the potential penalty Appellant faced with each offense, *i.e.*, a conviction for robbery carries a maximum penalty of 20 years' incarceration and a $25,000.00 fine and a conviction of possessing instruments of crime carries a maximum penalty of 5 years' incarceration and a $10,000.00 fine.

[5] The trial court explained the nature of Appellant's criminal charges as follows:

> [W]e want to make sure [] that you understand you're charged with two forms of murder, murder of the first degree, murder of the second degree, aggravated assault as a felony of the first degree. There are three counts of those.
>
> Robbery, felony of the first degree. There are three counts of those. Firearms not to be carried without a license, fleeing or attempting to elude police officers, felonies - both felonies of the third degree. Possessing instruments of crime as misdemeanors of the first degree. Simple assault at Counts 12, 13[,] and 14, misdemeanor of the second degree, and recklessly endangering another person at [Counts] 15, 16, 17, 18, 19, 20, and 21 as misdemeanors of the second degree.

N.T., 6/21/21, at 23.

he "explained the substance of these charges" to Appellant, to which Attorney Nard replied affirmatively. *Id.* at 24.

Upon our initial review of the record, we found that it was unclear what was meant by the term "substance" as it related to Appellant's criminal charges. *Lampley*, 2023 WL 8234316, at *11. In particular, we found that, based upon the record then-before us, we were unable to discern "whether Appellant was appropriately and sufficiently advised of the elements of each crime." *Id.* at *12. As such, we remanded the case to the trial court so it could "conduct an evidentiary hearing to determine what, if anything, was explained by Attorney Nard to Appellant regarding the elements of the crimes." *Id.* (stating, "the trial court shall determine what Attorney Nard meant when he stated he 'explained the substance of [the charges]' to Appellant").

Upon remand, the trial court, after conducting an evidentiary hearing on December 15, 2023, made the following findings of fact:

1. Attorney Sandmeyer, who was appointed on February 14, 2020[,] to represent Appellant, reviewed the criminal complaint and the *affidavit* of probable cause with Appellant including emphasis on the most serious charges of murder of the first degree, murder of the second degree, [] aggravated assault[ - serious bodily injury,] robbery[ - inflicts serious bodily injury,] firearms not to be carried without a license, and fleeing or attempting to elude police officer.

2. Attorney Sandmeyer represented Appellant at the preliminary hearing [on February 28, 2020,]·wherein the Commonwealth presented extensive testimony from Pennsylvania State Trooper Adam Blashock regarding the

conduct engaged by Appellant which encompassed the criminal activity charged in the criminal complaint.

3. The magisterial district judge read the charges on the record at the outset of the preliminary hearing.

4. Attorney Sandmeyer further testified at the [December 2023] evidentiary hearing that he explained the burdens of proof to Appellant and the differences between a *prima facie*/probable cause burden of proof and the much more difficult burden of beyond a reasonable doubt.

5. All charges from the preliminary hearing were bound over to [the trial] court[,] and the Commonwealth formally filed the [criminal] information which enveloped the entirety of the charges enumerated in the criminal complaint.

6. Attorney Sandmeyer testified that he reviewed and discussed with Appellant the criminal complaint, [the criminal] information, and all discovery material.

7. Following Appellant's formal arraignment [on June 1, 2020,] Attorney Sandmeyer filed an *omnibus* pretrial motion and motion for *writ* of *habeas corpus* to dismiss several of the counts, including all three [] simple assault charges. Attorney Sandmeyer testified that in preparing [the] motion[s], he discussed the substance of the charges that he sought to have dismissed and his theory of legal insufficiency.

8. Attorney Sandmeyer testified that, throughout his representation, he [] explained the nature of [] the charges to Appellant and at no time did Appellant ever indicate he did not understand the charges.

9. Attorney [] Nard testified he was privately retained in November 2020. Attorney Nard specifically recalled reviewing the elements of the charges with Appellant during his first meeting with Appellant. Although Attorney Nard did not read the elements of each charge *verbatim*, he explained the substance of the charges and the elements to Appellant by using common sense language that was able to be understood by Appellant. Attorney Nard stated that it is his practice to explain the elements of the charges in simple and conversational terms to his criminal defendant[-]clients because this practice enables them to

more readily understand the nature and elements of the charges.

10. Attorney Nard testified he could not specifically recall discussing the elements of the simple assault charges with Appellant. First, with respect to simple assault at [C]ount 12[], this charge was withdrawn following the request of the Commonwealth and by [trial] court order dated June 17, 2021. Thereby, any contention Appellant was deprived of the elements of [C]ount 12 is moot because it no longer existed at the time of the *Grazier* hearing held on June 21, 2021. The simple assault charges at [C]ounts 13 and 14 of the amended information pertained to [two additional] victims[.] These counts were again nearly synonymous with the charging language asserted in the robbery counts ([Counts] 7 and 8) that, in the course of committing a theft, Appellant did hold the victims at gunpoint and put them "in fear of imminent serious bodily injury." Attorney Nard's testimony emphasized that he did explain the nature and elements of the entirety of the charges to Appellant. The criminal information also illustrates the conduct charged in the "physical menace" simple assault at [C]ounts [13 and 14, which] was encompassed in the language of the robbery charges at [C]ounts 7 and 8 involving the same two victims[.] Consequently, Attorney Nard was confident that he explained the substance of the charges to Appellant.

11. Additionally, Attorney Nard's testimony revealed that there was never a question of whether Appellant understood the charges. Both Attorney Sandmeyer and Attorney Nard were clear that Appellant understood the nature and substance of the charges he faced and the Commonwealth's burden of proof.

12. Attorney Nard stated and explained to Appellant that the [Commonwealth] had to prove each of the crimes and their elements beyond a reasonable doubt.

13. When specifically asked by the [trial] court what Attorney Nard meant when he explained the substance of the charges to Appellant, Attorney Nard testified he explained the elements of each of the charges in his initial meeting with Appellant.

> 14.     Finally, Attorney Nard testified that Appellant was steadfast in his commitment to represent himself and at no time did Appellant ever change his mind or equivocate in his decision to represent himself.

Trial Court Opinion, 1/24/24, at 3-6 (record citations, extraneous capitalization, and footnotes omitted).  In finding that Appellant had been advised of the elements of the criminal charges, the trial court stated,

> Based on the testimony of Attorney Sandmeyer and the testimony of Attorney Nard that they explained the nature and elements of the charges to Appellant, in addition to the trial court's colloquy and exhibits from the *Grazier* hearing [on June 21, 2021], the trial court finds that the minimum requirements of Rule 121 were clearly met to warrant an examination of the totality of the relevant circumstances.

*Id.* at 8 (citation and extraneous capitalization omitted).

As discussed *supra*, the trial court, at the June 21, 2021 *Grazier* hearing, reviewed with Appellant the charges filed against Appellant and the potential penalties Appellant could receive.  N.T., 6/21/21, at 23-24.  At the conclusion of the charges and potential penalties review, the trial court asked Attorney Nard if he "explained the substance of these charges [to Appellant,]" to which Attorney Nard responded in the affirmative.  *Id.* at 24.  Shortly thereafter, the trial court asked Appellant

> And you know the nature and elements of the charges against you as you've had a preliminary hearing.  You've had an information, a complaint, discussions with Attorney Sandmeyer and Attorney Nard, and as well, I just read the charges to you; is that correct?

*Id.* at 25.  Appellant responded in the affirmative.  *Id.*

At the evidentiary hearing on December 15, 2023, Attorney Nard was asked what he meant when he informed the trial court that he reviewed the "substance of the charges" with Appellant. N.T., 12/15/23, at 83. Attorney Nard stated that his explanation of the "substance of the charges" was his "review of what was required to establish each of those [charges.]" *Id.* at 83. Attorney Nard explained that, after being retained by Appellant on November 2, 2020, he met with Appellant in either late 2020 or early 2021. *Id.* at 56-58, 87. Attorney Nard stated that, at their initial meeting, he reviewed the charges with Appellant, and "the discussion [of] the elements would have happened [at] that first meeting[.]" *Id.* at 57-58, 87. Attorney Nard recalled going over the elements of the charges of murder, robbery, aggravated assault, possess of a firearm, fleeing or eluding police, and reckless endangerment. *Id.* at 59-64. Attorney Nard stated he "did not go over the elements of simple assault" or review the Vehicle Code summary offenses with Appellant.[6] *Id.* at 58-59. Attorney Nard stated that in explaining the elements of the charges to Appellant, he did not recite *verbatim* the statutory definition of each charge but, rather, explained the elements of each charge based upon his review of the information, the criminal complaint, and his "collective

---

[6] At the time of Attorney Nard's initial meeting with Appellant, Appellant was charged with, *inter alia*, two counts of simple assault pursuant to 18 Pa.C.S.A. § 2701(a)(1) and two counts of simple assault pursuant to 18 Pa.C.S.A. § 2701(a)(3). **See** Information, 4/15/20, at Counts 13 – 16; **see also** Amended Criminal Complaint, 2/28/20, at Offense #9 and Offense #22.

experience" as a criminal defense attorney in a way that Appellant could understand the elements of the charges. *Id.* at 87-99, 104.

Upon review, we discern no error in the trial court's determination that, at the June 21, 2021 *Grazier* hearing, Appellant was aware of the elements necessary to prove each criminal charge. As Attorney Nard explained, at his initial meeting with Appellant he reviewed, in a colloquial manner, the elements of the criminal charges with the exception of the simple assault charges. Appellant was, however, aware, based upon his review of the information with Attorney Nard and his attendance at his preliminary hearing, that he was charged with several counts of simple assault. *See* N.T., 2/28/20, at 3-4. Appellant, having reviewed the information and criminal complaint with Attorney Nard and Attorney Sandmeyer, would have been aware of the elements of, *inter alia*, the simple assault charges based upon the description of those charges set forth in the information and criminal complaint.[7]

---

[7] To convict an individual of simple assault under Section 2701(a)(1) of the Crimes Code, the Commonwealth must establish that the individual had the specific intent to cause bodily harm and took a substantial step towards causing bodily harm or intentionally, knowingly, and recklessly did cause bodily injury to another. *Commonwealth v. Soto*, 202 A.3d 80, 94 (Pa. Super. 2018); *see also* 18 Pa.C.S.A. § 2701(a)(1).

To convict an individual of simple assault under Section 2701(a)(3) of the Crimes Code, the Commonwealth must establish that the individual "intentionally plac[ed] another in fear of imminent serious bodily injury through the use of menacing or frightening activity." *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003); *see also* 18 Pa.C.S.A. § 2701(a)(3).

_____

In the information, the charges of simple assault were defined as follows

**Count Thirteen:**

And the district attorney further charges that on the day and year aforesaid in the said County of Erie and State of Pennsylvania, [Appellant] did attempt to cause or intentionally, knowingly[,] or recklessly caused bodily injury to another, to-wit: [Appellant] did shoot [the deceased victim] in the back and leg occurring at Wendy's, 102 Washington Towne Boulevard, Washington Township, Erie County, Pennsylvania; thereby [Appellant] did commit the crime of simple assault, a misdemeanor of the second degree.

**Count Fourteen:**

And the district attorney further charges that on the day and year aforesaid in the said County of Erie and State of Pennsylvania, [Appellant] did attempt to cause or intentionally, knowingly[,] or recklessly caused bodily injury to another, to-wit: [Appellant] did discharge a firearm in the immediate vicinity of [one of the victims] during an active robbery, occurring at Wendy's, 102 Washington Towne Boulevard, Washington Township, Erie County, Pennsylvania; thereby [Appellant] did commit the crime of simple assault, a misdemeanor of the second degree.

**Count Fifteen:**

And the district attorney further charges that on the day and year aforesaid in the said County of Erie and State of Pennsylvania, [Appellant] did attempt by physical menace to put another in fear·of imminent serious bodily injury, to-wit: [Appellant] did hold [another victim] at gunpoint and demand money from the victim[,]occurring at Wendy's, 102 Washington Towne Boulevard, Washington Township, Erie County, Pennsylvania; thereby [Appellant] did commit the crime of simple assault, a misdemeanor of the second degree.

**Count Sixteen:**

Having found record support that the trial court satisfied Rule 121 in its colloquy of Appellant, we concur with the trial court that the totality of the circumstances supports a finding that Appellant knowingly, intelligently, and voluntarily waived his right to counsel at the June 21, 2021 *Grazier* hearing.

In his second issue, Appellant claims the trial court violated his right to self-representation as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution by appointing his former-trial counsel, Attorney Nard, as standby counsel and

---

And the district attorney further charges that on the day and year aforesaid in the said County of Erie and State of Pennsylvania, [Appellant] did attempt by physical menace to put another in fear of imminent serious bodily injury, to-wit: [Appellant] did hold [a third victim] at gun point and demand money from the victim[,] occurring at Wendy's, 102 Washington Towne Boulevard, Washington Township, Erie County, Pennsylvania; thereby [Appellant] commit the crime of simple assault, a misdemeanor of the second degree.

Information, 4/15/20, at 4-5 (extraneous capitalization omitted).

In the amended criminal complaint, the charges of simple assault were defined as follows:

In that, on or about said date, [Appellant] did attempt to cause or did intentionally, knowingly[,] or recklessly cause bodily injury to another.

In that, on or about said date, [Appellant] did attempt by physical menace to put another in fear of imminent serious bodily injury.

Amended Criminal Complaint, 2/28/20, at Offense #9, *citing* 18 Pa.C.S.A. § 2701(a)(1), and Offense #22, *citing* 18 Pa.C.S.A. § 2701(a)(3) (extraneous capitalization omitted).

having standby counsel act as a "liaison" at various stages of the trial. Appellant's Brief at 46-55. Appellant alleges 11 instances in which the trial court violated his constitutional right to self-representation by having standby counsel present but excluding Appellant from the discussions. *Id.* at 50-52. In particular, Appellant asserts that the trial court permitted standby counsel to be present, and participate in one instance of *voir dire* of an empaneled juror, nine instances of sidebar discussions with the Commonwealth and the trial court, and one instance of an in-chambers discussion of the proposed verdict slip and jury instructions. *Id.* Appellant contends that "the practice employed by the trial court effectively abridged or curtailed his right to self-representation." *Id.* at 52. Appellant avers that, at one point, even standby counsel "expressed concern that his questioning of a witness at a sidebar might blur the lines of his role." *Id.* at 53.

It is well-established that pursuant to the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, a defendant, such as Appellant, has a constitutionally protected right to self-representation in a criminal trial.[8] *See Faretta v. California*,

_____

[8] The Sixth Amendment of the United States Constitution guarantees that

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory

422 U.S. 906, 816 (1975); *see also Commonwealth v. Payson*, 723 A.2d 695, 700 (Pa. 1999). Because Appellant's claim, asserting violations of his constitutional right to self-representation, raises a question of law, our standard of review is *de novo* and our scope of review is plenary.[9] *Commonwealth v. Lucarelli*, 971 A.2d 1173, 1178 (Pa. 2009).

In accord with a defendant's constitutional right to self-representation, a trial court may appointment standby counsel to assist the defendant.

---

process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

Article I, Section 9 of the Pennsylvania Constitution guarantees

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

Pa. Const. art. I, § 9.

[9] Appellant frames his claim within the context of the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution but does not assert that the Pennsylvania Constitution provides him heightened protection of his right to self-representation. As such, we evaluate Appellant's claim under the assumption that the protections afforded by each constitutional provision are co-extensive.

*McKaskle v. Wiggins*, 465 U.S. 168, 170 (1984); *see also Faretta*, 422 U.S. at 834 n.46 (stating, the trial court may appointment standby counsel "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary"); Pa.R.Crim.P. 121(D) (stating, "When the defendant's waiver of counsel is accepted, standby counsel may be appointed for the defendant.  Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice."); *Commonwealth v. Spotz*, 47 A.3d 63, 82 (Pa. 2012) (permitting the trial court to appoint standby counsel).  When standby counsel has been appointed and "a defendant elects to proceed at trial *pro se*, the defendant - and not standby counsel - is in fact counsel of record and is responsible for trying the case." *Spotz*, 47 A.3d at 83, *relying on Commonwealth v. Ellis*, 626 A.2d 1137, 1138-1139 (Pa. 1993) (prohibiting hybrid representation); *see also McKaskle*, 465 U.S. at 183 (stating, "*Faretta* does not require a trial [court] to permit 'hybrid' representation").

To preserve a defendant's right to self-representation, "[t]he *pro se* defendant must be allowed to control the organization and content of his[, or her,] own defense, to make motions, to argue points of law, to participate in *voir dire*, to question witnesses, and to address the [trial] court and the jury at appropriate points in the trial." *McKaskle*, 465 U.S. at 174.  While the trial court is permitted to appoint standby counsel, the trial court may impose limitations on standby counsel's role.  *Spotz*, 47 A.3d at 82-83 (permitting

the trial court to limit standby counsel to answering the accused's legal questions; prohibiting standby counsel from taking notes concerning trial testimony, volunteering instructions to the accused on what to do or say next, or suggesting that an objection may be warranted); *see also McKaskle*, 465 U.S. at 177 (stating, the unsolicited and excessively intrusive participation by standby counsel may undermine the objectives underlying the right to self-representation).

In assessing whether a defendant's right to self-representation has been violated, "the primary focus must be on whether the defendant had a fair chance to present his[, or her,] case in his[, or her,] own way." *McKaskle*, 465 U.S. at 177. The High Court in *McKaskle* explained,

> First, the *pro se* defendant is entitled to preserve actual control over the case he[, or she,] chooses to present to the jury. This is the core of the [] right [to self-representation]. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the [] right [to self-representation] is eroded.
>
> Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself[, or herself]. The defendant's appearance in the status of one conducting his[, or her,] own defense is important in a criminal trial, since the right to appear *pro se* exists to affirm the accused's individual dignity and autonomy. . . . Appearing before the jury in the status of one who is defending himself[, or herself,] may be equally important to the *pro se* defendant. From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself. From the defendant's own point of view, the right to appear *pro se* can lose much of its

importance if only the lawyers in the courtroom know that the right is being exercised.

*Id.* at 178. Standby counsel's involvement in the trial cannot destroy the appearance that a defendant is acting *pro se*. *Id.* at 181.

Nevertheless, "[o]nce a *pro se* defendant invites or agrees to any substantial participation by [standby] counsel, subsequent appearances by [standby] counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his[, or her,] request that standby counsel be silenced." *Id.* at 183. A defendant's right to self-representation is

> not infringed when standby counsel assists the *pro se* defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete. Nor are they infringed when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure.

*Id.*; *see also Commonwealth v. Williams*, 196 A.3d 1021, 1030-1031 (Pa. 2018) (explaining that, an agreement by a defendant to standby counsel's collaborative role and the defendant's reliance on counsel precludes an assertion that standby counsel usurped the defendant's right to self-representation).

In the case *sub judice*, Appellant alleges 11 instances in which the trial court violated his right to self-representation. Appellant's Brief at 50-52. Nine of those instances involve discussions at sidebar where the trial court, the Commonwealth, and standby counsel were present but Appellant was not,

remaining, instead, at counsel table. *Id.* at 51-52. Another instance occurred on the first day of trial, where the trial court conducted *voir dire* of an empaneled juror in the jury room with the Commonwealth and standby counsel present but Appellant was not present. *Id.* at 50-51. The final instance involved an in-chambers discussion where the trial court, the Commonwealth, and standby counsel gathered to discuss the proposed verdict slip and jury instructions but Appellant was not included in that discussion. *Id.* at 52.

A review of the record reveals that on June 28, 2021, prior to the start of trial and outside the presence of the jury, the following conversation occurred:[10]

| [Trial Court:] | All right.  So I still will have Attorney Nard as standby counsel.  And that's what you [(Appellant)] would like, correct? |
|---|---|
| [Appellant:] | Correct. |
| [Trial Court:] | In other words, he'll be sitting next to you.  If you have questions for him, you could consult with him and the other - go ahead.  You want to ask him something? |
| [Appellant:] | Under [the Fourth Amendment -] |
| [Trial Court:] | Slow down because, remember, [the court reporter is] taking everything down. |
| [Appellant:] | Right.  [The Fourth Amendment right - ]the right of accused in criminal prosecutions.  I have |

---

[10] This conversation between Appellant and the trial court occurred **after** the *voir dire* of the empaneled juror, as discussed *infra*, but before the jury was sworn in.

|                    | the right to have an assistant counsel for my defense[,] right? |
| ------------------ | --------------------------------------------------------------- |
| [Trial Court:]     | Well, he's standby, and I made sure he's there.                 |
| [Appellant:]       | Same as assistant, right?                                       |
| [Trial Court:]     | I don't know if it's the same. He's available for you to ask and consult [on] legal questions. So you can - he's there for you. He's your resource. |
| [Appellant:]       | Right.                                                          |
| [Trial Court:]     | And to that end, if there's ever a meeting - sometimes we meet at what we call a sidebar. It's actually right here (indicating). [Standby counsel] may come up for you as your representative, but then he'll go back and tell you everything. |
| [Appellant:]       | Okay.                                                           |
| [Trial Court:      | Is that acceptable to you?                                      |
| [Appellant:]       | That's acceptable.                                              |

N.T., 6/28/21, at 15-16.

As evidenced by this conversation, Appellant agreed to utilize, and rely on, standby counsel for purpose of sidebar discussions. Appellant has not cited to, nor has our review of the record revealed, an instance whereby Appellant revoked his agreement to allow standby counsel to participate in sidebar discussions on his behalf. As such, having agreed to permit standby counsel to participate in sidebar discussions on his behalf, Appellant cannot now validly assert that standby counsel usurped his right to self-representation. *See McKaskle*, 465 U.S. at 183; *see also Williams*, 196 A.3d at 1030-1031. Therefore, we find Appellant's nine allegations of a

violation of his right to self-representation concerning sidebar discussions to be without merit.

With regard to Appellant's assertion that his right to self-representation was violated when he was excluded from an in-chamber discussion of the proposed verdict slip and jury instructions, the record reveals that on July 1, 2021, the following discussion occurred in Appellant's presence but outside the presence of the jury:

| [Trial Court:] | I should note that for purposes of jury instructions, I was provided a very exhaustive list at that time by then counsel [now standby counsel], Attorney Nard, because it was [submitted] at our deadline for proposed jury instructions. And I also received them from the [Commonwealth]. So, Attorney Nard, at that time did you review with [Appellant] what those proposed instructions would be? |
|---|---|
| [Standby Counsel:] | Your Honor, I did review the evening of our conference what I [] submitted. Yes. |
| [Trial Court:] | Okay. My intention is to - now that we've had testimony, I can sort of more focus in on what I feel is appropriate or has been, at least, a basis for the legal jury instructions. Because at [the time the proposed jury instructions were submitted], obviously, we didn't have any predicate to go on, and I think it was just more of an idea of where it was going, but now we do. But I will fairly let both sides know - of course, you, as the defendant, will know that, and then that will give you the benefit for closing argument. |
| [Commonwealth:] | Yes, Your Honor. |

| | |
|---|---|
| [Trial Court:] | Anything on that? |
| [Commonwealth:] | Is that being done now, Your Honor? |
| [Trial Court:] | No. I would think first thing tomorrow morning, but I would give you an opportunity of where I think I'm going on it. |
| [Commonwealth:] | In chambers, Your Honor? |
| [Trial Court:] | Pardon me? |
| [Commonwealth:] | In your chambers, Your Honor. |
| [Trial Court:] | Probably, if we would have a charge conference. Maybe in my courtroom, to allow [Appellant] to be present for that. And he always has been privy to every piece of information. If I haven't told him, I think the record's reflected it, but I know Attorney Nard has continually updated us on that status. And then I would just confirm it with [Appellant] to assure that he has been informed at every stage of this trial. Okay. |

N.T., 7/1/21, at 209-211.

After closing arguments on July 2, 2021, the trial court conducted an in-chambers discussion of, *inter alia*, the proposed verdict slip and the jury instructions. N.T., 7/2/21, at 43-52. A review of the July 2, 2021 transcript pertaining to this in-chambers discussion does not reveal that Appellant was present during this discussion. *Id.* Instead, the trial court, upon concluding the in-chambers discussion and reconvening in the courtroom, noted that "Attorney Nard is reviewing the proposed verdict slip with [Appellant.]" *Id.* at 53. The trial court then asked Appellant if the proposed verdict slip was acceptable, to which Appellant replied in the affirmative. *Id.* Although

- 30 -

Appellant agreed to permit, and to rely on, standby counsel for purpose of sidebar discussions with the trial court and Commonwealth, Appellant's agreement did not extend to discussions involving the proposed verdict slip and the jury instructions. As both the verdict slip and the jury instructions are key components utilized by the jury in determining a defendant's guilt or innocence, we find a *pro se* defendant's participation in a discussion concerning the proposed verdict slip and the jury instructions to be essential to the preservation of a *pro se* defendant's right to self-representation. Nonetheless, after the in-chambers discussion concluded, standby counsel reviewed the proposed verdict slip with Appellant, and Appellant agreed that the verdict slip was acceptable and correct. Appellant did not lodge an objection to the proposed verdict slip or his exclusion from the in-chambers discussion. As such, Appellant accepted standby counsel's role as his representative in these discussions. Therefore, we discern no violation of Appellant's right to self-representation.

Finally, Appellant asserts that his right to self-representation was violated when the trial court conducted a *voir dire* of an empaneled jury member prior to the start of trial outside Appellant's presence. Appellant's Brief at 50-51.

"[C]ounsel's presence is required at every stage of a criminal proceeding where substantive rights of the accused may be affected." ***Commonwealth v. Johnson***, 828 A.2d 1009, 1014 (Pa. 2003). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial

discretion or when certain legal rights may be lost if not exercised at that stage." **Id.** "[*V*]oir dire is a critical stage of [a] criminal proceeding[.]" ***Commonwealth v. Hunsberger***, 58 A.3d 32, 37 (Pa. 2012); ***see also Commonwealth v. Ellison***, 902 A.2d 419, 423 (Pa. 2006) (stating, "[a] criminal defendant's right to an impartial jury is explicitly granted by Article [I], Section 9 of the Pennsylvania Constitution and the Sixth Amendment of the United States Constitution[, and t]he jury selection process is crucial to the preservation of that right"); ***Commonwealth v. Le***, 208 A.3d 960, 972 (Pa. 2019) (stating, "[t]o enable a [defendant] to enforce his[, or her] constitutional right to an impartial jury, he[, or she,] must be afforded an adequate *voir dire* to identify unqualified jurors" (original brackets omitted)). As such, counsel's presence is required at *voir dire*.[11] ***Hunsberger***, 58 A.3d at 37; ***see also Johnson***, 828 A.2d at 1014. Therefore, logically, in the case of a *pro se* defendant, the defendant's presence, as his own legal representative, is required **at all stages** of *voir dire* in order to properly

_____

[11] While a defendant, who is represented by counsel, has a constitutional right to observe the *voir dire* process, the defendant has a constitutional right to have his or her counsel present at, and participate in, all stages of the *voir dire* process, including in-chambers discussions and sidebars. ***Hunsberger***, 58 A.3d at 38-40 (stating that, "although a defendant has the clear right to participate in the jury selection process, that right is not compromised where[] the defendant, [] was in the courtroom[ but] was not present at sidebar where his[, or her,] counsel was questioning several venirepersons outside the range of [the defendant's] hearing"). A defendant's subsequent consultation with his or her counsel upon conclusion of the sidebar precludes a finding that the defendant's constitutional right to be present during jury empanelment has been violated. ***Id.*** at 40.

vindicate the defendant's right of self-representation in the process of selecting a fair and impartial jury. *See McKaskle*, 465 U.S. at 174 (stating that, a defendant's right to self-representation "plainly encompasses" the right to, *inter alia*, participate in *voir dire*); *see also Hunsberger*, 58 A.3d at 37; *Johnson*, 828 A.2d at 1014; *Spotz*, 47 A.3d at 83 (stating that, "[w]hen a defendant elects to proceed at trial *pro se*, the defendant – and not standby counsel – is in fact counsel of record and is responsible for trying the case").

The record reveals that, on June 24, 2021, the trial court began the *voir dire* process by introducing Appellant and stating that he was choosing to represent himself. N.T., 6/24/21, at 36; *see also id.* at 46 (stating that, Appellant was dressed appropriately and afforded the first chair at counsel table). The trial court also introduced standby counsel and explained that standby counsel was "there for the interest and convenience of [Appellant.]" *Id.* at 37. Thereupon, the trial court began the questioning of the individual venirepersons to which Appellant had the opportunity to fully participate. *Id.* at 44, 49, 53, 60, 67, 70, 74, 78, 83-85, 95, 101, 110, 112, 114, 116, 120-121, 127-128, 133, 142, 157, 159-160, 165, 169, 176, 182, 184-185, 193, 195, 198, 202, 204, 208, 219-220, 224, 227, 231, 234, 238. At the conclusion of the *voir dire* process on June 24, 2021, a jury of 12 members, with two alternates, was empaneled.

On June 28, 2021, prior to the jury members being sworn in, and prior to the start of trial, the trial court conducted *voir dire* of an empaneled juror, alternate juror #1, to determine whether the juror knew one of the law

enforcement officers that was expected to testify at trial on behalf of the Commonwealth.[12]  N.T., 6/28/21, at 4-9.  At the outset of this *voir dire*, the trial court represented that the Commonwealth and standby counsel were present in the jury room.  *Id.* at 4.  Appellant was not present.  *Id.*

The trial court began by explaining the need for further *voir dire* as follows:

> Last night [(June 27, 2021,)] our tip staff[] had connection with [alternate juror #1.  Alternate juror #1] expressed concern that there was a name that she may have been familiar with and I'll let her explain and the name was Cody Krahe.  I have the spelling as K-R-A-H-E.
>
> Now, I spoke informally with [alternate juror #1] this morning in the presence of my law clerk, [] and we had looked at the witness list - the lay witness list not knowing that Cody Krahe[ is] a [Pennsylvania] State Trooper.  So on our lay witness list, there is no Cody Krahe.   There is a Cody, but it's [a different last name].
>
> We then dismissed [alternate juror #1].  I informed counsel, but then it was bought to my attention that there was a Trooper Cody Krahe.  So I thought it was prudent that we put this on the record with those of us assembled here and now just follow it up.  Okay.

*Id.* at 4-5.  The trial court then proceeded to inquire of alternate juror #1 regarding her connection with Trooper Krahe.[13]  After the trial court concluded

---

[12] The *voir dire* of alternate juror #1 occurred in the jury room.  N.T., 6/28/21, at 4.

[13] Alternate juror #1 explained that she did not know Trooper Krahe personally but, rather, knew his wife, who was the owner of the gym where alternate juror #1 belonged.  N.T., 6/28/21, at 5-6.  Alternate juror #1 stated that she did not socialize with the wife and "probably [has not] seen her in person in probably years."  *Id.* at 6.

its questioning of alternate juror #1, the Commonwealth declined to ask any additional questions. *Id.* at 7. Standby counsel, however, asked the juror several questions "out of an abundance of caution on behalf of [Appellant.]"[14] *Id.* At the conclusion of the *voir dire*, the trial court did not excuse alternate juror #1 from serving on the jury, stating,

> I don't think there's any reason why [alternate juror #1] should be disrupted or removed. She's absolutely - actually, she did everything we want her to do. She went out of an abundance of caution. You're to be commended for that. She knew the name was in her mind, not knowing where. Now I think we do know what refreshed your recollection from that Thursday and seeing it in this questionnaire. But based on those responses and your commitment to be fair and impartial, I'm satisfied with that.

*Id.* at 9.

Upon returning to the courtroom where Appellant was waiting, the trial court did not explain to Appellant on the record the supplemental *voir dire* of alternate juror #1 or the trial court's decision following the *voir dire*. *Id.* at 9-10. Instead, the trial court reaffirmed Appellant's commitment to represent himself at trial. *Id.* at 10-18. Thereafter, the jury entered the courtroom and was sworn in prior to the start of trial. *Id.* at 19.

Based upon the record currently before us, it is clear that Appellant did not participate in the supplemental *voir dire* of alternate juror #1. What is unclear, however, is whether standby counsel conferred with Appellant after

---

[14] Prior to questioning alternate juror #1, standby counsel stated, "I'm kind of in an odd position[,]" to which the trial court responded, "I know." N.T., 6/28/21, at 7.

the supplemental *voir dire* process and Appellant agreed to the trial court's decision to retain alternate juror #1. Whether Appellant was advised by Attorney Nard as to what occurred during the supplemental *voir dire* of alternate juror #1 and whether Appellant, if so advised, lodged no objection to what took place is critical to the analysis of whether Appellant is entitled to relief. Therefore, we are constrained to remand this case for the sole purpose of determining whether Attorney Nard, as standby counsel, conferred with Appellant about the events surrounding the supplemental *voir dire* process and, if he did so confer, whether Appellant ratified standby counsel's participation in the supplemental examination of alternate juror #1 on Appellant's behalf, and whether Appellant had no objection to the trial court's decision to retain alternate juror #1.

In his final issue, Appellant challenges the sufficiency of the evidence to support his convictions of two counts of aggravated assault.[15] Appellant's Brief at 29-36. Specifically, Appellant contends the Commonwealth failed to sufficiently demonstrate that Appellant had the requisite intent to inflict serious bodily injury on the two victims. *Id.* at 36.

Our standard and scope of review of a challenge to the sufficiency of the evidence is well-settled.

_____

[15] Appellant was convicted of three counts of aggravated assault stemming from his involvement with three separate victims. In his final issue, Appellant challenges the sufficiency of the evidence to support his aggravated assault convictions as they relate to two of the three victims.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [fact-finder] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019).

Section 2702(a)(1) of the Crimes Codes states that

A person is guilty of aggravated assault if he[, or she,] attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1) (formatting modified). In order to establish a conviction for aggravated assault under Section 2702(a)(1), the Commonwealth must demonstrate that "a person, under circumstances manifesting extreme indifference to the value of human life, [] (1) attempt[ed] to cause serious bodily injury to another, or (2) cause[ed] such injury intentionally, knowingly[,] or recklessly." *Commonwealth v. Edwards*, 229 A.3d 298, 313 (Pa. Super. 2020).

- 37 -

> For aggravated assault purposes, an "attempt" is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. Intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct[,] or attendant circumstances.

*Commonwealth v. Miller*, 217 A.3d 1254, 1257 (Pa. Super. 2019) (citations, brackets, and some quotations marks omitted), *appeal denied*, 226 A.3d 562 (Pa. 2020). "An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." *Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa. Super. 2013) (*en banc*), *appeal denied*, 78 A.3d 1089 (Pa. 2013).

To determine if a defendant acted with the requisite intent for a conviction of aggravated assault under Section 2702(a)(1), a totality of the circumstances test is applied. *Miller*, 217 A.3d at 1257. Under the totality of the circumstances test, courts may consider, *inter alia*, "evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him[, or her,] from escalating the attack, the defendant's use of a weapon or other implement to aid his[, or her,] attack, and his[, or her,] statements before, during, or after the [attack] which might indicate his[, or her,] intent to inflict injury." *Id.*, *citing Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006).

In challenging the sufficiency of the evidence to support his aggravated assault convictions pertaining to two of the three victims, Appellant asserts

that "the evidence reveals that Appellant drew a handgun, pulled on the slide to chamber a round, and gestured around with the [hand]gun while attempting to get [one of the victims] to open the safe." Appellant's Brief at 33-34. Appellant further asserts that the "video [surveillance recording] showed the [hand]gun mostly pointed in a downward direction, but [the second victim] also recalled [the handgun] being pointed in her direction." *Id.* at 34. Appellant further contends that the evidence establishes that "neither [victim] heard Appellant [] utter any threat." *Id.* Appellant argues that evidence demonstrating that he pointed a handgun at the victims absent specific threats to cause the victims serious bodily injury is insufficient evidence to support his convictions. *Id.* at 34-35.

At trial, the first victim testified that she was working at the front counter and dining area of the restaurant on the day of the incident. N.T., 6/28/21, at 55. When Appellant entered the restaurant, the first victim was near the front door. *Id.* at 56. Appellant grabbed the first victim and pushed her towards the front counter. *Id.* at 57. The first victim stated that she believed Appellant wanted her to open the cash register located at the front counter so she stopped moving near the front counter. *Id.* at 60. Appellant, however, told the first victim to keep moving, and the two individuals continued to move towards the manager's office. *Id.* Upon entering the office, the first victim stated that the second victim was present and watching a training video. *Id.* at 69. The first victim testified that Appellant asked her to open the safe, but the first victim explained she was unable to do so

because only a manager could open the safe. *Id.* It was at this moment, the first victim stated, that Appellant pulled out a handgun and held it level with the first victim. *Id.* at 70. The first victim stated that Appellant "cocked" the gun to "start it," thereby chambering a bullet for firing purposes. *Id.* The first victim, who was standing at this point, "got down" near the safe and put her hands up. *Id.* at 71. Thereafter, Appellant left the office, and the second victim shut the office door while the first victim called 911 emergency services. *Id.* The first victim stated that while in the office, Appellant talked to her, but that the first victim could not hear or understand what Appellant was saying. *Id.* at 76. The first victim testified that she was focused on the handgun and that Appellant got angrier when the handgun appeared and he became frustrated because he could not gain access to the money in the safe. *Id.* On cross-examination by Appellant, the first victim stated that she did not hear Appellant say anything about harming her, but admitted that she could not understand or hear a "single thing" Appellant said after the initial encounter in the lobby of the restaurant. *Id.* at 79, 85. The first victim indicated that Appellant was taller than her, but she could not say, for certain, how tall Appellant appeared. *Id.* at 75, 82. The first victim also stated that at one point, after chambering a live round of ammunition in the handgun, Appellant pointed the handgun at her. *Id.* at 80.

The second victim stated that the day of the incident was her first day of employment at the restaurant. *Id.* at 88. The second victim was watching a training video in the office when Appellant and the first victim entered. *Id.*

at 89-90. The second victim stated that she could not hear anything Appellant was saying but his voice seemed to be "angry and deep." *Id.* at 91. The second victim recalled the first victim explaining that only a manager could open the safe and that the first victim kneeled near the safe after Appellant "cocked" the handgun. After Appellant exited the office, the second victim closed the office door and kneeled next to the door in order to secure it because it could not be locked. *Id.* at 93-94. On cross-examination by Appellant, the second victim stated that she did not hear Appellant threaten anyone, but admitted that she could not "really hear him at all." *Id.* at 98. The second victim saw Appellant moving the handgun around, at one time pointing the handgun at the safe, and at another time pointing the handgun at the two victims. The second victim stated that she felt like she was in danger because Appellant had a gun and that he cocked the gun for firing purposes. *Id.* at 99-100. Finally, the second victim described Appellant as being taller than her. *Id.* at 103.

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we find sufficient evidence to support Appellant's convictions for aggravated assault pertaining to the two victims. It is well-settled that the act of pointing a handgun at a person, without more, is insufficient to prove a defendant intended to cause the victim serious bodily

harm.[16]  ***See Commonwealth v. Alford***, 880 A.2d 666, 671 (Pa. Super.

2005), *appeal denied*, 890 A.2d 1055 (Pa. 2005).  In the case *sub judice*,

however, Appellant did more than point a handgun at the two victims.  Both

victims testified that Appellant "cocked" the handgun, which is the act of

chambering a handgun in preparation of firing the handgun, and then pointed

the handgun at the victims.  ***See Commonwealth v. Kimbrough***, 872 A.2d

1244, 1249 (Pa. Super. 2005) (explaining that, the act of "cocking" a handgun

and chambering a round prepares a handgun for firing).  The act of preparing

the handgun for purpose of firing the weapon and then pointing the handgun

at the victims constitutes a substantial step toward perpetrating a serious

bodily injury upon the victims.  The only step left to cause serious bodily injury

---

[16] In charging the jury, the trial court explained, in pertinent part, that

> any particular action by a defendant, although serious such as
> pointing a loaded weapon at another, is not in and of itself
> sufficient evidence from what you may find that he intended to
> cause serious bodily injury.  This is so because any such action
> may also be evidence of some less serious outcome the defendant
> actually intended such as simply to scare the alleged victim or to
> cause only some less serious injury.

> It is only when after consideration of the evidence that you
> conclude beyond a reasonable doubt that the defendant's action
> was a substantial step in a chain of events that he consciously set
> in motion with his intended result being that the alleged victim or
> victims would actually suffer serious bodily injury that you should
> find the defendant guilty of this count.  Otherwise, you should find
> the defendant not guilty of aggravated assault attempt at serious
> bodily injury.

N.T., 7/2/21, at 78-79.

would have been for Appellant to have pulled the trigger and discharged the handgun. *See Fortune*, 68 A.3d at 986-987 (stating, the only remaining step Fortune would have to take to inflict serious bodily injury was to pull the trigger). As such, we find sufficient evidence to support Appellant's two convictions of aggravated assault under section 2702(a)(1).

Although we find that Appellant validly waived his right to assistance of counsel and that there was sufficient evident to support Appellant's convictions of aggravated assault, we are, nevertheless, constrained to remand this case for an additional evidentiary hearing. The sole purpose of the remand is to determine whether Attorney Nard, as standby counsel, conferred with Appellant after the supplemental *voir dire* of alternate juror #1 and, if he so conferred with Appellant, whether Appellant ratified standby counsel's participation at the supplemental examination on Appellant's behalf, and whether Appellant made no objection to the trial court's decision to retain alternate juror #1. The trial court shall conduct an evidentiary hearing on this limited issue and return the certified record to this Court within 60 days of the date of this memorandum.

Case remanded. Jurisdiction retained.